H. P. HART, Respondent, v. J. J. HOPSON, Appellant.

St. Louis Court of Appeals, December 27, 1892.

1. **Evidence**: COMPETENCY OF DECLARATIONS OF A CO-CONSPIRATOR. In order to render the declarations of a stranger to the action competent evidence, on the ground that he was a co-conspirator of the party

Hart v. Hopson.

against whom they are offered, there must first be some proof of the existence of the conspiracy. Such proof may be circumstantial, but it must do more than raise a bare suspicion of a possible conspiracy.

2. **Instructions**: RIGHT OF JURY TO DISCREDIT WITNESSES. An instruction to the jury declared that, if they believed any witness had willfuly sworn falsely as to any of the facts mentioned in the other instructions as bearing upon the claim sued on or the defenses thereto, they were at liberty to entirely disregard the testimony of such witness. *Held*, that the instruction authorized the jury to discredit only witnesses who had wilfully sworn falsely to material facts, and was proper.

3. **Principal and Agent**: RIGHT OF LATTER TO COMPENSATION. The defendant in this cause employed the plaintiff to procure from a third party a contract for the sale of the latter's leasehold interest in certain realty, and agreed to pay the plaintiff a fixed compensation as soon as the contract was obtained. The plaintiff procured the contract, but the sale was not consummated because the leasehold title contracted for was valueless, it being incumbered for its full value. *Held*, that the plaintiff having acted in ignorance of this defect in the title, and having performed the services agreed upon, he was entitled to the stipulated compensation.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*J. W. Collins*, for appellant.

The court erred in refusing to admit to the jury legal and competent evidence offered by defendant regarding the statements and acts of Daniel Prince, concerning the property described in the statement. The acts done and statements made by Daniel Prince to defendant during the time of negotiating the agreement in question were, under all the facts and circumstances in evidence, admissible for the purpose of showing or tending to show fraud on the part of the plaintiff in his dealings with defendant concerning the agreement and property in controversy. Fraud or conspiracy need not be proven by direct or positive evidence, but

they may be shown and inferred from facts and circumstances. *Herboth v. Gaal*, 47 Mo. App. 255; *State v. Walker*, 98 Mo. 95; *Redding v. Wright*, 51 N. W. Rep. 1056; *Ochs v. People*, 124 Ill. 399; *Burgert v. Borchert*, 59 Mo. 80; *Massey v. Young*, 73 Mo. 273; *Frederick v. Allgaier*, 88 Mo. 598; *Hopkins v. Sievert*, 58 Mo. 201. (2) The court should have given the instructions asked by defendant at the close of plaintiff's case, and of the entire case, stating that plaintiff could not recover under the evidence, no agreement having been shown by the evidence to have been brought about by plaintiff between defendant and Philip Braun, as is alleged in plaintiff's cause of action. If plaintiff is entitled to recover at all, it is upon a *quantum meruit* for services, and not upon the express agreement. *Blackwell v. Adams*, 28 Mo. App. 61. (3) One of the instructions given by the court of its own motion, as well as one given on behalf of plaintiff, is erroneous, and calculated to mislead and confuse the jury. They are not based on the pleadings or issues in the case. The plaintiff's suit is for services rendered by him in bringing about and consummating a complete and entire agreement between defendant and Philip Braun for the purchase of property. By said instructions plaintiff's right to recover for the whole services, alleged by him to have been rendered, is permitted and directed upon proof being adduced of his doing a portion of the services, and which constitute only one element or part of the services entering into consummating the whole combined agreement. These instructions were also against the evidence. *Fairgrieve v. Moberly*, 29 Mo. App. 141; *George v. Railroad*, 40 Mo. App. 447; *Parker v. Marquis*, 64 Mo. 38; *Mound City Co. v. Conlon*, 92 Mo. 221; *Merrett v. Poulter*, 96 Mo. 237; *Johnson v. Railroad*, 96 Mo. 340. (4) The court erred in giving the instruction for plaintiff, declaring

that there was no evidence of any fraud, collusion or conspiracy on the part of plaintiff with other persons, and that such defense was not made out. The court could not take this issue from the jury if there was any evidence from which fraud or conspiracy could have been inferred. *Pipe Co. v. Ins. Co.*, 52 N. W. Rep. 1070; *St. Vrain v. Boat Co.*, 56 Mo. 590; *Cook v. Railroad*, 63 Mo. 402; *Kelly v. Railroad*, 70 Mo. 608. The court erred in the instruction given by it as to the credibility of the witnesses. The jury were directed by it that, if any witness had wilfully sworn falsely to any of the facts mentioned in the instructions, they were at liberty to disregard his entire evidence. The instruction should have been confined to the false swearing to material facts in evidence, and the jury should not have been allowed to disregard a witness' testimony, where the jury believed he had sworn falsely to an irrelevant, immaterial or trivial matter. The jury should not have been restricted and limited to only the facts mentioned in the instructions in determining whether a witness had sworn falsely, but they should have been allowed in determining this fact to take into consideration all of the material facts and circumstances in evidence. *Blitt v. Heinrich*, 33 Mo. App. 243, 246; *Evans v. Railroad*, 16 Mo. App. 525; *Bank v. Murdoch*, 62 Mo. 73; *Railroad v. Ives*, 12 Sup. Ct. Rep. 679; *Fraser v. Haggerty*, 49 N. W. Rep. 616; *Carter v. Carter*, 28 N. E. Rep. 948; *Thompson v. Douglas*, 13 S. E. Rep. 1015.

*C. B. Allen* and *E. L. King*, for respondent.

There was no error in refusing to admit in evidence the statements of Prince. Prince was not a party to the suit, and the statements called for were not made in presence of plaintiff. *Fougue v. Burgess*, 71 Mo. 389.

The declaration of an alleged conspirator is not admissible against such party until the conspiracy is established. *Strohmeyer v. Zeppenfield*, 28 Mo. App. 273; *Holliday v. Jackson*, 30 Mo. App. 263. There must be substantial evidence of a conspiracy *aliunde*, independent of the declaration of a co-conspirator, before these declarations are admissible. *Strohmeyer v. Zeppenfield*, 28 Mo. App. 273; *Hambright v. Brockman*, 59 Mo. 52. There was no conspiracy shown and the statements were incompetent. *State v. Walker*, 98 Mo. 104. Where, on a charge of fraud, the evidence is as consistent with honesty as dishonesty, it will be construed in favor of honesty. *Webb v. Darby*, 94 Mo. 621; *Ames v. Gilmore*, 59 Mo. 537; *Page v. Dixon*, 59 Mo. 43; *Henderson v. Henderson*, 55 Mo. 534; *Rumbold v. Parr*, 51 Mo. 592; *Dallam v. Renshaw*, 26 Mo. 544.

THOMPSON, J.—This action was originally commenced before a justice of the peace upon the following statement of account: "1891. J. J. Hopson to H. P. Hart. To money due for services rendered, time and attention given, in making an examination and giving opinion as an expert, and in bringing about an agreement between him and Philip Braun, concerning the purchase of certain property on the northeast corner of Franklin avenue and Seventeenth streets, in the city of St. Louis, Missouri, $200." A trial before a jury in the circuit court resulted in a verdict and judgment in favor of the plaintiff for the sum claimed, with interest; from which the defendant prosecutes this appeal.

There was no defensive pleading, nor did counsel for the defendant make any oral statement of his defense; but in his statement filed in this court his defenses, which we shall assume to be the defenses which he attempted to develop in his evidence and by

the cross-examination of the plaintiff's witnesses, are thus stated:

"*First.* That plaintiff [Hart] did not perform any of the alleged services set forth in the statement for defendant, and that whatever plaintiff did in the matter, he did for the Hopson Dairy Company, and Philip Braun, in whose names the agreement referred to in the cause of action was made; that defendant was treasurer of said company at and before the time said agreement was made, and acted as its agent in his dealings with Hart in reference to said agreement, as well as in all matters set out in his cause of action.

"*Second.* That misrepresentation and concealment of facts and fraud were practiced by the plaintiff Hart in bringing about an agreement for the purchase of the property described in the cause of action, and in reference to the services sued for, by means of which representation and fraud $200 was paid on the purchase price and agreement of purchase of said property to Philip Braun, when, in fact, the interest of said Braun in said property was worthless and of no value; that said property was incumbered for $6,000, when plaintiff represented to defendant that it was incumbered for $3,000; and plaintiff represented to defendant that the title to said property could be gotten and possession of the same could be obtained at any time, when, in fact, possession of said property could not be delivered by said Braun at all, or a good title given by him, he not being in possession of said property himself, having by a five years' lease and other conveyances and acts parted with the possession of said property and all control over the same, so that he even did not have the right to control or rent said property, or to collect or receive the rent coming therefrom.

"*Third.* That the plaintiff Hart, and one Daniel Prince, and said Philip Braun, the party named in

plaintiff's cause of action, or said Hart and Prince, did conspire and collude together for the purpose of perpetrating a fraud in the sale of the property described in the statement, and in bringing about the agreement for the purchase of the interest of said Braun in said property; that, by reason of said conspiracy, said agreement was brought about, and $200 paid on the same to said Braun upon the purchase price of said property for his leasehold interest therein, which was of no value and worthless, it being incumbered for about $6,000, when said Hart and Braun told defendant it was incumbered for $3,000, and said Braun could not give a title to or deliver possession of said property, as he and said Hart had represented to defendant that Braun could do, said Braun not being in possession of said property himself, nor had he either the right to possession or the right to control or rent the same, or to collect or receive the rent therefor.''

The plaintiff gave evidence at the trial tending to show the rendition of the services by him at the request of the defendant, as alleged in his statement, resulting in bringing about a contract between the Hopson Dairy Company, of which the defendant was the treasurer and one of the managers, and one Braun, the owner of a leasehold upon the property mentioned in the plaintiff's statement, for the sale of the leasehold by Braun to the dairy company. The agreement was in writing, and was as follows:

"St. Louis, Mo., September 21, 1891.

"Received of Hopson Dairy Company $200, in part payment of a certain leasehold of improved property, being situated on the northeast corner of Seventeenth street and Franklin avenue, city of St. Louis, and state of Missouri, which leasehold is this day sold to them for the total sum of $4,800, payable on terms of $1,000 in cash and the remainder of $800 ninety

days after date, with interest at six per cent. per annum, payable also in ninety days after date. Said deferred payment to be secured by a deed of trust, and assume a deed of trust of $3,000 already on said property. It is agreed by and between the undersigned that the title to said property is perfect, and will be conveyed free from liens and incumbrances, except as to taxes to date. The said Hopson Dairy Company is to have twenty days' time in which to have the title investigated. The said Hopson Dairy Company is given until the first day of November, 1891, to make the first payment on said leasehold, and, when the first payment is made, the said Hopson Dairy Company shall take possession of said leasehold. Now, if said Hopson Dairy Company fails to make the first payment on or before November 1, 1891, the sale shall be off and the money forfeited. If, upon examination, the title proves to be defective and cannot be made good within a reasonable time, the sale shall be off and the earnest money returned. And Mr. Philip Braun agrees to have the corner of Franklin avenue and Seventeenth street vacated in ninety days from time the said Hopson Dairy Company takes possession. We agree to above.

"(Signed)  PH. BRAUN,            [Seal]
        "HOPSON DAIRY Co.;      [Seal]
        "By J. J. HOPSON, Tres. [Seal]"

I. The first error assigned is the refusal of the trial court to admit in evidence the statements of a mulatto man named Prince, supposed to have been made to the defendant. The effort was to elicit evidence of the statements on the examination of the defendant by his own counsel. It appeared that, after the defendant employed the plaintiff to see if he could procure a purchase of the particular property, the plaintiff met Prince casually and asked him if he knew

the owner of the leasehold, and Prince said that he did; whereupon the plaintiff sent Prince out to Braun, to see if Braun wanted to sell. Braun said that he did, and agreed to give Prince a commission for bringing about a sale. Prince reported back to the plaintiff that he had made an agreement with Braun, and that, if he (Prince) succeeded in selling it, Braun was to pay him a commission. Braun's version of this seems to be a little different. It is to the effect that, after Prince learned that the bargain had been closed, he came to Braun and wanted him to pay him a commission for introducing the plaintiff Hart to Braun, which Prince had done; and that Braun finally agreed to give Prince $100 for his services as soon as the trade should be consummated, and he get his money. Whichever of these versions is to be taken as correct, it is perceived that Prince, by reason of having been sent by the plaintiff to Braun to make these inquiries, acquired a direct motive for bringing about the trade in the hope of getting a commission from Braun. Acting, no doubt, under this motive, he made several visits to the defendant. The defendant testified that Prince was around his place of business several times; that Hart, the plaintiff, spoke of Prince in connection with the matter several times; that, on one occasion, after Hart had left, Prince came in, "to see us about this matter." Then followed the questions which the court ruled out: "What did Prince say, when he came in? (Counsel for plaintiff objects as immaterial. The court ruled that the defendant must produce evidence tending to show a conspiracy before the declarations of a supposed conspirator are admissible; to which ruling of the court the defendant then and there duly excepted.)

"*Q.* Did you receive a letter from Mr. Prince about the price that was to be paid for this Seventeenth

and Franklin avenue property? Did he show you a letter? *A.* He showed me a letter.

"*Q.* When was it? *A.* Just about the time or a little before we paid the earnest money on the property.

"*Q.* What was the purport of that letter? *A.* Well, I did not read the letter; he just said that the letter was from his boss to Mr. Braun, making an offer on the property of $6,000, and, if we wanted to buy the property for $4,800—(Counsel for plaintiff objects, as it was the same matter as that ruled against in the last question.)

"The court: · I think the objection is well taken. The statements of Mr. Prince are not admissible, until you show that Mr. Prince is in some way connected with Mr. Hart, or that a conspiracy actually existed to make the declarations admissible as the declarations of a conspirator. (Defendant then and there duly excepted to the ruling of the court.)

"*Q.* State what Prince said in regard to putting up this $200. (Counsel for plaintiff objects. The court sustains the objection, to which ruling the defendant then and there duly excepted.)

"The court: I do not mean to say that this evidence may not be admissible; but, until you lay a foundation for those declarations, they are not. (To which ruling of the court defendant duly excepted at the time.)"

There were further similar questions and similar rulings. These rulings were correct. No substantial evidence had been given tending to show, what is now claimed in support of this assignment of error, that a conspiracy had been concocted between the plaintiff and Prince to get the defendant, or the dairy company of which he was treasurer, to purchase a worthless leasehold belonging to Braun. It is argued in

support of this assignment that a conspiracy need not be shown by direct and positive evidence, but may be shown by circumstantial evidence. This is true, and it is also true that in many cases conspiracies can be shown in no other way than by circumstantial evidence. But, nevertheless, there must be circumstances reasonably pointing to the conclusion of a conspiracy; and, in order to justify a court in letting in the declaration of a supposed co-conspirator, such circumstances must be more than enough to raise a bare suspicion of a possible conspiracy. These declarations, if in fact made by Prince, were easily explainable on the motive that Prince evidently had in bringing about a sale of the property in the hope of getting a commission from Braun; and we see no substantial evidence of a conspiracy between Prince and the plaintiff to cheat the defendant.

II. The next assignment of error is that the court should have given the instructions asked by defendant at the close of the plaintiff's case, renewed at the close of the entire case, to the effect that the plaintiff was not entitled to recover under the evidence. The argument adduced in support of this assignment is that no evidence had been adduced showing that an agreement, *had been brought about* by the plaintiff between the defendant and Philip Braun, as alleged in the plaintiff's cause of action; so that (such is the argument). if the plaintiff is entitled to recover at all, it is upon a *quantum meruit* for services, and not upon the express agreement. The plaintiff's evidence tended to show that the defendant Hopson employed him to bring about the purchase of this property, and agreed to give him $200 as his compensation if he succeeded. He also instructed the plaintiff to proceed as though desiring to purchase it in his own name, the defendant

having some reason for concealing from Braun the real purchaser until the trade had been consummated. The evidence also tended to show that the plaintiff, having ascertained through Prince that Braun was willing to sell, negotiated with Braun, so that Braun finally agreed to take $4,800 for his leasehold. The defendant had promised the plaintiff that, if he could get Braun to sell his interest for that amount, he, the defendant, would give the plaintiff $200 for his trouble and services. The plaintiff testifies that he knew nothing whatever about the dairy company in the matter; that there was no sign over the door of the place where the defendant did business indicating that it was the office of a dairy company, and that he knew nothing about the dairy company being the real party in interest until the trial before the justice of the peace. The plaintiff had such negotiations with Braun that Braun finally agreed to sell his interest for $4,800, and then plaintiff introduced the defendant to Braun as the real purchaser. Defendant and Braun then went to a notary where the contract was drawn up, in which the dairy company is named as the purchaser, which contract has already been set out. This statement of facts makes it appear that this assignment of error is untenable; that the plaintiff did bring about the contract, and that if the contract was not finally consummated by reason of the inability of Braun to clear off the title, and procure an assignment of his leasehold to the dairy company, that was something with which the plaintiff had nothing to do. He effected the trade, and brought the parties together and the written agreement above set out was made in pursuance of the negotions which he had had with Braun, and $200 of earnest money were paid by the dairy company to Braun; and all this, according to the plaintiff's evidence, was done by the plaintiff at the request of the

defendant, and upon a promise to pay the plaintiff $200 for such services, the plaintiff not knowing that the dairy company was the real party in interest until after the suit was commenced. This seems to make it very clear that the court committed no error in submitting the case to the jury.

III. The next assignment of error complains of the following two instructions; the first given at the request of the plaintiff, and the second given by the court of its own motion: "The court instructs the jury that, if they believe from the evidence that the defendant agreed with plaintiff to give him $200 if plaintiff would examine certain buildings and make a report thereon to defendant, and would procure Braun's consent to the transfer of the leasehold interest mentioned in the evidence for a consideration of $4,800, and that plaintiff did so examine, and did so make a report to defendant, and did so procure Braun's consent, and that Braun and Hopson entered into an agreement for such transfer, your verdict should be for the plaintiff, although you may further find that no transfer of the lease was made, unless you believe from the evidence that, in making such contract, the defendant Hopson acted for and in behalf of the Hopson Dairy Company, and that plaintiff knew such to be the fact."

"Unless you believe from the evidence that the defendant agreed with plaintiff to give him $200, if plaintiff would examine certain buildings on the property mentioned by witnesses, as the subject of negotiations between the plaintiff and defendant, and make a report thereon to defendant, and would procure Braun's consent to the transfer of the leasehold interest mentioned in the evidence for a consideration of $4,800, and that, in pursuance of such agreement, the plaintiff did so examine said buildings, and did so make a report to defendant, and did so procure Braun's consent, and

that Braun and Hopson entered into an agreement for such transfer, you should find for the defendant.''

The argument in support of this assignment of error is, that these instructions are not based on the pleadings or issues in the case; that they proceed in disregard of the pleadings, and place the plaintiff's right to recover on the evidence alone, and direct the jury that, if the plaintiff procured Braun's consent to the transfer of the leasehold, and if Braun and Hopson entered into the agreement, the plaintiff should recover. We find ourselves unable to gather the force of the objections to these instructions. It is argued that the plaintiff's suit is for services rendered by him in bringing about, and consummating, a complete and entire agreement between defendant and Braun for the purchase of the property. Recurring to the plaintiff's statement of his cause of action, we find that it is drawn without much particularity of statement, as is admissible in statements in actions before justices of the peace. It is simply an account ''for money due for services rendered, time and attention given, in making an examination and giving opinion as an expert, and in bringing about an agreement between him [defendant] and Philip Braun, concerning the purchase of certain property,'' describing it. It appeared in the evidence that ''the property'' of Braun consisted of a leasehold upon the described property, and that this leasehold was the subject of the negotiations and of the contract which has been already quoted. These instructions were, therefore, carefully applicable to the evidence under the plaintiff's statement, and there seems to be no tenable ground for concluding that they are open to the vice of singling out certain facts, not in themselves controlling, and directing a verdict regardless of other facts at issue. These instructions do not, as is argued, restrict the issue, but proceed upon the evidence

within the case stated in the plaintiff's statement.   If the evidence produced by the party sustaining the burden of proof does not make a case as large as his allegations make it, the court is not to instruct the jury according to his allegations, but is to instruct them according to his evidence.

IV.   The next assignment of error is predicated upon the giving by the court, at the request of the plaintiff, of the following instruction: "The court instructs the jury that there is no evidence before them of any fraud, collusion or conspiracy on the part of the plaintiff with other persons, and that defense, therefore, is not made out." This instruction was manifestly drawn with the idea of meeting that part of the defense, which endeavored to exonerate the defendant from keeping his agreement with the plaintiff, on the ground that the plaintiff had conspired with the colored man, Prince, to misrepresent the condition of the title of the property to the defendant, and to impose upon him (or upon the dairy company) a worthless leasehold of a party, who did not have possession himself and who did not have the power of putting the purchaser in possession.   It would serve no useful purpose to attempt to go into an analysis of the evidence for the purpose of disposing of this assignment of error.   It is sufficient for us to say that we have carefully examined the evidence, and that we agree with the circuit judge that there was no evidence of such a fraud, collusion or conspiracy, between the plaintiff and any other person as that described in the instruction.

V.   The next assignment of error is predicated upon the giving by the court of its own motion of the following cautionary instruction: "You are instructed that the jury are the sole judges of the credibility of the several witnesses that have appeared before you, and of the weight or importance to be given

to their respective statements of testimony; and, if you believe from all that you have seen and heard at the trial that any witness has wilfully sworn falsely as to any of the facts mentioned in the instructions herein, as bearing on the plaintiff's alleged claim or defendant's defenses thereto, then you are at liberty to disregard entirely the testimony of such witnesses.''

We are quite unable to gather the force of the objection to this instruction. It is said that it should have been confined to false swearing to material facts in evidence. It is true that the usual frame of language, in which such instructions are given in this state, directs the jury that, if they believe that any witness has wilfully sworn falsely to any material fact in issue, they are at liberty to disregard his testimony entirely. But this customary frame of language leaves the jury without any specific direction by which to decide what are material facts in issue; whereas the instruction, as drawn by the court in this case, directs them to the hypothetical facts stated in the instructions. In this regard the instruction seems to be more carefully drawn, and hence better, than the instruction which is usually given under this head. This instruction was given by the court of its own motion, in modification of a similar instruction tendered by the plaintiff. It is said to have been intended by the counsel for the plaintiff to direct the attention of the jury to the evidence of the defendant himself, which to some extent had been indirectly impeached by evidence that, at the trial before the justice of the peace, he had admitted the plaintiff's claim and had stood solely upon the defense, that the contract was not his personal contract but was the contract of the dairy company of which he was treasurer. On the whole, we see no error in giving this instruction, and we overrule this assignment of error.

We see no other error in the other instructions. The errors assigned seem to be all of them untenable. Plaintiff's case was that he was employed by the defendant as the latter's agent to procure the sale to the defendant of the leasehold interest of Braun in the property described in the plaintiff's statement. As the defendant's agent, he was not employed to make representations to the defendant as to the title—he had nothing to do with that; he was not a guarantor of that; he simply, obeying the instructions of the defendant and concealing the identity of the defendant as the purchaser, procured Braun to make the agreement to transfer his leasehold interest in the premises for $4,800; and, this having been done, he introduced the defendant to Braun, as the person with whom the contract was to be closed. Thereupon, Braun and defendant closed it in the name, not of the defendant, but of the dairy company. If the title did not prove as good as the defendant expected that it would be, it is difficult to see how he can throw the responsibility of that upon his agent, and make that a ground of not paying the compensation which he agreed to pay his agent for his services in the premises. If, on the other hand, the plaintiff, having been so appointed by the defendant his agent in the premises, in violation of his trust and duty, manœuvered to entrap his principal into making the purchase, knowing that it would turn out to be a worthless purchase and one that could not be consummated, it must be conceded that this would be a good defense to the action. But it seems to us that there is no evidence tending substantially to make out such a defense as against this plaintiff. What the colored man, Prince, may have said or done in that regard, is something for which the plaintiff is not answerable in the absence of evidence that he authorized it, or that

it was done in pursuance of a conspiracy concocted between him and Prince.

Our conclusion is that the judgment of the circuit court must be affirmed. It is so ordered. All the judges concur.