[White v. The State.]

# White v. The State.

## Murder.

(Decided February 3, 1916. Rehearing denied March 30, 1916.
71 South. 452.)

1. **Homicide; Evidence; Res Gestae.**—A statement made by deceased at the time of the shooting "They got me from behind the barrel," was admissible as part of the res gestae.

2. **Words and Phrases; Cut Shell.**—A cut shell is one in which the part containing the powder has been nearly severed from the part containing the shot so as to project the part containing the shot as a unit, thus inflicting a more dangerous wound than if the shot were scattered.

3. **Homicide; Evidence.**—The fact that defendant had cut shells in his possession is admissible in connection with the evidence of the character of the wounds inflicted upon deceased.

4. **Same.**—Possession of cut shells and a shot gun by defendant is admissible in connection with evidence that the assault upon deceased was by one who was engaged or about to become engaged in depredating upon the property of deceased in doing which he shot deceased upon being discovered.

5. **Same.**—Where defendant testified that he was an innocent traveler passing to his home late at night, and that he shot deceased in self defense, evidence that he took a circuitous, unusual and long route home, was admissible.

6. **Same; Instructions; Self-Defense.**—A charge asserting that deceased had the right to investigate unusual noises around his store at night, but was not justified in firing on defendant without warning, unless he was, or was apparently, committing a felony, or was in such an attitude as to lead deceased reasonably to believe that he was about to commit an assault, was not invasive of the province of the jury.

7. **Trial; Request by Jury; Reasonable Doubt.**—Where the jury merely requested further instructions as to justification of deceased in firing on defendant when deceased discovered defendant on his premises late at night, it was unnecessary that the court should define the doctrine of reasonable doubt in response to the request.

8. **Charge of Court; Reasonable Doubt; Necessity of Request.**—One accused of crime must request a definition of the doctrine of reasonable doubt in its relation to other specific charges, and in the absence of such a request a failure to instruct thereon is without error.

9. **Same; Invading Province of Jury.**—It is proper to refuse charges invading the province of the jury.

10. **Same; Misleading.**—A charge is properly refused which is calculated to confuse and mislead the jury.

11. **Homicide; Instruction; Self-Defense.**—Charges upon self-defense which contain no appropriate reference to defendant's freedom from fault in bringing on the difficulty, and his inability to retreat as required by law, are properly refused as omitting an essential element of self-defense.

12. **Same.**—A charge asserting that although the jury may believe beyond a reasonable doubt that defendant committed the crime charged, yet, if the jury further believe beyond a reasonable doubt that he was compelled to do so by fear of death or great bodily harm from deceased, and he had no way of escape from doing it without being in danger of death or great bodily harm, defendant would not be guilty of murder in any degree, failed to hypothesize the negative of the possible fact that defendant was not the aggressor, and was not engaged in an unlawful enterprise before or at the time of the killing.

13. **Same.**—A charge which assumes that deceased had assaulted defendant was properly refused.

14. **Same; Other Defenses.**—Such a charge was properly refused as permitting a conviction for manslaughter where the only defense offered was a complete justification so that defendant was either guilty of murder, or was innocent of any crime.

15. **Charge of Court; Argumentative.**—Charges are properly refused as argumenttive which direct as to the duty of the juror under his oath to stand by his convictions favorable to finding defendant not guilty, etc.

16. **Same; Misleading.**—A charge asserting that they could not find defendant guilty of murder in the first degree if you believe that deceased shot at him first, and defendant was not doing an unlawful act, and defendant could not have retreated without placing himself in more danger, was properly refused as excluding from consideration unlawful acts of defendant just prior to the shooting.

APPEAL from Jefferson Criminal Court.

Heard before Hon. WILLIAM E. FORT.

Jesse White was convicted of murder, and he appeals. Affirmed.

The facts sufficiently appear. After the charge of the court and the retirement of the jury the jury returned and asked the court to give further instructions on a matter of law, and on being brought back into the court the foreman asked the court if Dr. Ferrell would have been justified in shooting at a negro who was found about his commissary premises at a late hour of the night without warning him before he shot, and under what circumstances he would have been justified if he fired at defendant first after finding him intruding on the premises. Thereupon, in the presence of defendant and his counsel and the jury and the officers of the court, the court instructed the jury as follows: "If Dr. Ferrell heard a knocking or thumping in the direction of his store late at night, he had the right to go down and investigate, and if he went down there from his house for that purpose, and found a man there on his premises near the store, he would not be justified in firing on him without warning, unless the man was at the time Dr. Ferrell fired

in the act, or unless he reasonably appeared to be in the act, of committing a forcible felony such as a burglary on the store, or unless, on Dr. Ferrell's approaching him, defendant was in the act of committing some forcible felony upon Dr. Ferrell, as, for instance, assaulting him with intent to murder him, or unless the defendant was in such an attitude at the time as to cause Dr. Ferrell reasonably to believe that the defendant was about then and there to commit such an assault upon him. A mere trespasser cannot be fired upon without warning, however late at night it may be, or however suspicious the actions of the intruder may be, unless under the circumstances I have stated to you."

The following charges were refused defendant: (2) A homicide may be voluntary, deliberate, and premeditated, and still not unlawful nor wrong in the eyes of the law, and, if the only evidence of malice in this cause is the use of a deadly weapon, and there are circumstances in evidence which, if believed, tend to show a justification for the use of a deadly weapon, and the jury believe such evidence, the killing was voluntary, deliberate, and premeditated, and done with a deadly weapon, and used for the purpose of destroying the life of deceased, would be excused, and a verdict of acquittal should be given. (4) If the jury believe from the evidence beyond a reasonable doubt that defendant killed deceased from a present, impending necessity, or from the belief of a present, impending necessity, then he is not guilty of murder.

(6) Although you may believe beyond a reasonable doubt that defendant committed the crime with which he stands charged, yet, if you further believe beyond a reasonable doubt that he was compelled to do it by the fear of death or great bodily harm from the deceased, and he had no way of escape from doing it, without being in danger of death or great bodily harm, the defendant would not be guilty of murder in any degree.

(7) Although you believe from the evidence that defendant used excessive resistance to the assault by deceased, yet, if you believe the fatal blow was inflicted in the heat of blood, and with a deadly weapon, and there is no evidence of previous malice, formed design, or such evidence of deliberation as to show that reason held sway, then this is manslaughter, and you cannot find defendant guilty of murder.

(8) It is the duty of each and every member of the jury in this case to decide for himself the issues presented, and if, after a careful examination and consideration of all the evidence in this case, and the instructions of the court as to the law governing the case, and free consultation with his fellows, there is any juror who has a reasonable doubt of defendant's guilt, it is his duty under his oath to stand by his conviction favorable to finding defendant not guilty.

(A) You cannot find defendant guilty of murder in the first degree if you believe Dr. Ferrell shot at him first, and the defendant was not doing an unlawful act, and defendant could not have retreated without placing himself in more danger.

DOUGLASS & RAY, for appellant. WILLIAM L. MARTIN, Attorney General, for the State.

McCLELLAN, J.—The appellant has been sentenced to death for the murder of Dr. Ferrell. The doctor was the proprietor of a store at Praco, in Jefferson county. His dwelling was across the roadway from the store. Some time after midnight, just previous to the homicide, the doctor and a servant sleeping in his dwelling heard a noise about the store. Both went out on the porch; the doctor having his pistol. It was a clear, moonlight night. The doctor decided to go to the store to investigate the noise, and as he went down the steps of the porch fired the pistol once in the air. The servant testified that he crossed the roadway to the store, and, turning the corner of the store building, passed out of her theretofore plain view of him. The store fronted the road. Its front was near the ground level, but because of the slope of the earth under the building the rear thereof was considerably elevated, thus leaving a view from the porch under the building. The servant testified that almost immediately after the doctor passed out of her sight she heard gunshots, the flashes of which, as she saw them, came from the elevated space beneath the rear of the building. There was a barrel and a metal cask under this part of the building. Immediately following the shots the doctor called to the servant to come to him, that he was shot, but immediately directed her not to come, lest she be shot. There appeared to be tracks of a man or men about the barrel under the store, and what seemed to be a pistol hole in the metal cask. The doctor was mortally wounded. and sur-

vived only a short time. Dogs sufficiently shown to be trained to trail human beings (*Hodge's Case*, 98 Ala. 10, 13 South. 385, 39 Am. St. Rep. 17; *Gallant's Case*, 167 Ala. 60, 52 South. 739), were brought to the scene of the homicide, within a reasonable time, and therefrom took a trail leading to a dwelling in which defendant was found and arrested. Later he admitted having shot Dr. Ferrell, but asserted that his act was in self-defense; that when the doctor turned the corner of the building he immediately saw, and began to shoot at, the defendant, who claimed he was but a traveler through that way, entirely innocent of any unlawful purpose or action. .

(1) In addition to testimony reciting the call made by the doctor for his servant immediately after he was shot, the prosecution was allowed to show by the servant that at the same time he said: "They got me from behind the barrel." These expressions of the mortally wounded man were so intimately related in time and occasion to the major fact as to fall within the range of res gestæ.—*Stevens v. State*, 138 Ala. 71, 35 South. 122.

There was no error in any of the rulings touching the handling and action of the dogs in and about the trailing done by the dogs from the store to the place whereat defendant was arrested. A proper predicate, under the familiar rule, was laid for the admission of the confessions of defendant that he alone shot the doctor.

(2-4) The prosecution was allowed, over defendant's objection, to have a witness qualified by experience to explain a "cut shell," and the difference, in effect, between a cut shell and an uncut shell. Cut shells, along with the defendant's gun, were found at the place of defendant's arrest. A cut shell is the result of nearly severing that part of the shell containing the shot from that containing the powder; and the effect of shooting such a shell is to project the severed part of the shell as a unit, rather than the shot from the shell. The effect of a cut shell on the object hit therewith is to make a larger hole or wound than is the case where an ordinary shell is discharged, and the shot strikes at a sufficient distance to admit of their separated flight. The use of a cut shell is necessarily more murderous in its effect upon a person hit therewith; and in a case like this the fact that the defendant prepared and had cut shells was a circumstance to go to the jury, in connection with the other evidence, includ-

ing that descriptive of the wound inflicted on the deceased. Furthermore, the fact that the defendant had equipped himself with this character of munition was likewise a proper matter for the jury's consideration in connection with the jury's right to find from the evidence that the assault upon the deceased was by one who was engaged or about to become engaged in depredating upon the property of the deceased, and this from a place behind a barrel under the store of deceased.

(5) There was no impropriety in the court's allowing testimony tending to show that the defendant had taken a circuitous and unusual route at that time of night from one point in that section to his home; he having testified that he was an innocent traveler toward his dwelling place from another point, from which he could have reached his dwelling place by a more convenient and direct route.

(6-8) There was no error in the instruction the court gave the jury in his supplemental charge. It was a correct statement of the law as we understand it, and in no manner invaded the jury's province to consider the guilt or innocence of the defendant in the light of his theory that he shot the doctor only in self-defense, after the doctor had twice fired at him. It was not necessary, in the connection in which the jury invited further instruction from the court, to define the doctrine of a reasonable doubt. If the defendant desired that the jury be instructed with reference to the doctrine of reasonable doubt in that connection, it was his duty to invoke the court's consideration of that matter in an appropriate way.

(9) Charge C refused to the defendant invaded the province of the jury, since it was entirely possible under the evidence to find the defendant guilty under the indictment, regardless of the purpose, lawful or otherwise, with which the defendant was at or about the store of the deceased. Furthermore, as we understand the defendant's case, he presented the sole theory that the homicide was justified on the ground of self-defense.

(10) Charge 2 requested for the defendant was calculated to confuse and mislead; and was hence properly refused.—*Gafford's Case*, 125 Ala. 1, 10, 28 South. 406, treating charge 1.

(11) Charge 3 requested for the defendant was correctly refused, for the reason that it predicates an acquittal without appropriate reference to his freedom from fault in bringing on

[Lightner v. The State.]

the difficulty and on his inability to observe his duty to retreat as defined in our law.

(12) Charge 6 requested for the defendant was due to be refused upon the ground that it pretermitted to hypothesize the negative of the possible fact that the defendant was not the aggressor, and was not engaged in an unlawful enterprise just before or at the time of the shoooting of deceased by him.

(13-16) Charge 7 was properly refused because it assumed that the deceased assaulted the defendant, because it pretermitted to negative in the hypothesis that the defendant was the assailant, and because it omitted to negative the possible fact that the defendant was unlawfully purposed and engaged just before and at the time of the tragedy. Furthermore, the defendant was either justified in taking the deceased's life, on the one hand, or, on the other hand, was guilty of murder.

(17) Charge 8 requested for the defendant was condemned in *Fowler's Case*, 155 Ala. 21, 45 South. 913 (see charge A).

(18) The refusal of charge A requested for the defendant was justified by its tendency to mislead the jury. Aside from other features of it that may have possessed a tendency to confuse or to mislead, that feature treating of the conduct of the defendant at the time he asserts that Ferrell fired on him was calculated to improperly exclude from consideration the unlawful acts or conduct of the defendant just previous to the shooting.

No error appearing, the judgment is affirmed.

Affirmed. All the Justices concur.