# Newsom v. The State.

### Murder.

(Decided May 20, 1916.   Rehearing denied August 1, 1916.
72 South. 579.)

1. **Evidence; Conclusion.**—A witness may state whether, just before he heard shots he heard a noise as if somebody was going by fussing, as this is an exception to the general rule against conclusions, that where a fact cannot be reproduced or made apparent to the jury, the witness may describe the fact according to the effect produced on his mind.

2. **Same; Res Gestae.**—A witness having testified that immediately after hearing the shots he heard a man holding a pistol speak to some one, who responded in the voice of defendant, the entire conversation then had between such persons was admissible as part of the res gestae.

3. **Same.**—The relation of the man with the pistol not being otherwise shown, such conversation was admissible as a conversation between defendant and his coadjutor in crime.

4. **Homicide; Evidence.**—Testimony that the witness, immediately after hearing the shots, saw a man with a pistol near the dead body, and that such man held a conversation with someone who responded in the voice of defendant, and that on being questioned the man said that he was guarding the body, whereupon the witness said that he thought he needed a doctor instead of a guard, was admissible as tending to show preconcert.

5. **Conspiracy; Accomplices.**—When, by prearrangement, or on the spur of the moment, two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, each is a conspirator, and if

[Newsom v. The State.]

the offense is carried out, each is guilty of the offense committed, whether he did any overt act or not.

6. **Same; Evidence.**—Community of purpose or conspiracy to commit a crime need not be proved by positive testimony, but may be shown by the conduct of the parties and the circumstances surrounding the act.

7. **Criminal Law; Evidence; Probative Force.**—The fact that certain circumstances in evidence may have been so explained as to destroy their probative force, does not affect its admissibility, the probative force being for the jury.

8. **Evidence; Res Gestae.**—Testimony that immediately after the shots were fired witness saw the defendant being carried away and heard someone remark "There is the scoundrel that done it, don't let him get away," is admissible as of the res gestae.

9. **Homicide; Self Defense; Preconcert.**—If at the time of the killing defendant was in collusion with another to kill deceased, and in consequence thereof did kill him, he could not be free from fault, and could not justify on the doctrine of self defense.

10. **Same.**—In view of the evidence the instruction given against the plea of self defense if there was a collusion, was not abstract, but properly given.

11. **Same; Malice.**—Instructions that malice may be presumed from the use of a deadly weapon, such as a loaded pistol, though not applied to the facts of the case, are not erroneous.

12. **Charge of Court; Explanatory.**—Where abstract instructions are given, it is the right and the duty of the other party to request appropriate explanatory instruction.

13. **Homicide; Instructions.**—Where the evidence for the state tended to show that defendant killed deceased following a quarrel which was sought by defendant in concert with others, a charge that from the intention of killing with a deadly weapon malice may be presumed, need not be followed by the qualification "unless the evidence which provide the killing showed excuse or extenuation."

14. **Charge of Court; Construction.**—The oral and written charges must be considered together, and where the oral charge is complete, the failure of the written charge to include all the elements cannot be said to be error.

15. **Same; Misleading; Argumentative.**—An instruction on the effect of passion as reducing murder to manslaughter, was properly refused as argumentative and misleading.

16. **Homicide; Self Defense; Instructions.**—In view of the conflicting evidence as to the circumstances attending the killing, an instruction on self defense requested by defendant was properly refused.

17. **Same; Jury Question.**—Under the evidence in this case, it was a question for the jury whether defendant was guilty of homicide.

18. **Same; Conspiracy; Evidence.**—The evidence examined and held sufficient to show conspiracy to kill deceased, and to bring the case within the rule that in cases of conspiracy the law presumes that the act was malicious, and that defendant intended to kill.

19. **Same; Self Defense.**—The instruction on imminent peril and apparent imminent peril requested by defendant was properly refused as confusing and uncertain.

[Newsom v. The State.]

20. **Same.**—Before one can shoot to the death, he must be in imminent peril, real or apparent, of losing his life, or suffering grievous harm to his person, and without the means of safely retreating.

21. **Trial; Limiting Argument.**—Where the record fails to show that counsel for defendant consumed the entire time allotted, error cannot be predicated on limiting the argument.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

(Ed. Note—This case was reviewed by the Supreme Court, and the decision affirmed. See *Ex parte Newsom*, 73 South. 1001.)

T. J. Newsom was convicted of murder in the second degree, and he appeals. Affirmed.

Most of the exceptions to rulings on the evidence sufficiently appear from the opinion. Mrs. Tinsdale testified that she was there a minute or two just after the shooting, and stayed there two or three minutes, and that there were three or four persons up under the trees; that she saw Mr. Newsom as they carried him in on the porch, and thought it was him that was shot, and heard some one say: "There is the scoundrel that done it; don't let him get away." That the voice was down under the trees.

The following charges were given at the request of the state:

(2) If the defendant was, at the time of the killing, in collusion with another to take the life of the deceased, and killed deceased in consequence thereof, then defendant cannot set up self-defense in this case.

(6) Appears from the opinion.

The following charges were requested by defendant:

(26) Sufficiently appears.

(29) If defendant shot under a bona fide belief that his life was in danger, and had, under all the circumstances, a reasonable cause to believe that he was in imminent danger at the moment the shot was fired, then defendant cannot be convicted.

WERT & LYNNE, and O. KYLE, for appellant. W. L. MARTIN, Attorney General, and P. W. TURNER, Assistant Attorney General, for the State.

BROWN, J.—The defendant killed C. Ed. Hatchett by shooting him with a pistol and was convicted and sentenced to a term of ten years in the penitentiary for murder in the second degree.

At the time of the homicide the defendant was a merchant on Church street in the city of Decatur and a justice of the peace, and the deceased, although a man of mature years, was engaged in the business of a "newsboy," delivering the evening newspaper to its several subscribers in the vicinity of the defendant's residence. The homicide was committed after deceased had received the evening paper for delivery and just after dark, and the place of the killing was immediately in front of the residence of W. A. Brown on Church street and only a short distance from the home of the defendant, who lived on the adjoining property. Previous to this time on one or more occasions the deceased had been arraigned and tried before the defendant as a justice of the peace for vagrancy, and in one instance was committed to jail by the defendant; and evidence was offered showing that the deceased had made threats of violence against the defendant, and tending to show some activity on deceased's part to procure evidence to impeach the defendant and oust him from office.

The prosecution advances two theories to justify the defendant's conviction and sentence. One is that the defendant conspired with others to do the deceased corporal hurt and, in pursuance of this unlawful conspiracy, accomplished his death; and the other is that the defendant armed himself with a pistol, waited at a picture show until the deceased in his usual round in delivering the evening paper would be in the locality of the defendant's home, there met or overtook him, provoked or voluntarily engaged him in a personal rencounter in which the deceased struck the defendant in the face, and, taking advantage of this situation and his surroundings, shot him to death. On the other hand, the defendant contends that the deceased waylaid and attacked him in the dark, murderously assaulted him, and, without knowing who his assailant was, but believing that he was bent on robbery, after deceased had thrown and pinned him to the ground, without drawing his weapon from his overcoat pocket, he fired two shots into the body of the deceased, one of which embedded itself in the spine, causing instant paralysis of the lower extremities, and totally disabling the deceased to further assault him; that, the homicide having been committed under these circumstances, it was justifiable and he should not have been convicted.

2. Trimble, a witness for the state, whose residence was on the lot adjoining W. A. Brown's residence, testified that he was in

his house when he heard the shots, and just before he heard the shots he *"heard a noise as if somebody was going by fussing,"* and almost immediately after this he heard two shots, and after the shots he heard a cry of distress; that he immediately started to the place of the shooting, and on reaching his front gate saw some one standing on the sidewalk in front of Brown's residence, some 60 feet away, and on reaching the place found a man standing on the sidewalk with a pistol in his hand. Hatchett's body was then prostrate on the ground, with his feet touching the sidewalk. The witness further testified: "Before I saw the man with the pistol I heard a voice saying, *'What must I do with him?'* which seemed to be from where I afterward found the man with his pistol standing, and the other party further on down replied, *'I don't care what you do with the s———n of a b———h. You can kill him as far as I am concerned.'* The party that asked, "What must I do with him,' was the party with the pistol, and the party who gave the answer was further west on down the sidewalk where *I saw Newsom.* I then went on down where the dead man was at. It was then when the conversation occurred between me and the man with the pistol."

The witness, on redirect examination, after he had detailed the conversation between witness and the man with the pistol, testified: "My best judgment is that it was *Newsom's voice* that said, 'I don't care what you do with him,' " etc.

The conversation between the witness and the man with the pistol occurred immediately on witness reaching the scene of the killing, and is stated by the witness thus: *"I ask him what he was doing with the pistol, and he said, 'I am guarding this man,' and I said 'I think he needs a doctor instead of a guard.' "*

(1, 2) The defendant objected to the question calling out the several statements above italicized and moved to exclude them; the objections and motions being overruled, now insists that these several statements were erroneously received in evidence. The admission of the first statement of the witness objected to was justifid by the exception to the general rule thus stated in *Mayberry v. State*, 107 Ala. 67, 18 South. 219: "Where a fact cannot be reproduced and made apparent to the jury, a witness may describe the fact according to the effect produced on his mind," and followed in *Welch v. State*, 156 Ala. 112, 46 South. 856. The presence of the man with a pistol standing over the prostrate body when the witness reached the scene of the homicide tended

to show that this man had committed the offense, or was there aiding and abetting the guilty party, and the conversation between this man and the voice which the witness finally stated in his best judgment was that of the defendant, who was then leaving the scene of the homicide, was so intimately related in time and occasion to the major fact to fall within the res gestæ rule, and shed light and give character to the acts and conduct of the parties.—*White v. State,* 195 Ala. 681, 71 South. 452; *Stevens v. State,* 138 Ala. 80, 35 South. 122.

(3) Furthermore, at the time this testimony was admitted, the relation of "the man with the pistol" to the transaction was not shown other than by the facts detailed by this witness, and on the face of the transaction as it then appeared this conversation was between the defendant and his coadjutor in crime, and aside from the res gestæ rule, was admissible against the defendant then on trial.—*Morris v. State,* 146 Ala. 66, 41 South. 274.

(4) If the conversation between the witness Trimble and the man with the pistol be treated independently of the other facts and circumstances detailed by the witness, it had no tendency to connect the defendant with the offense and in no way prejudiced him.—*Brindley v. State,* 193 Ala. 43, 69 South. 536. But when considered in connection with the other facts and circumstances, on its face it has some tendency to show preconcert.

(5, 6) "When by prearrangement or on the spur of the moment two or more persons enter upon a common enterprise or adventure, and a criminal offense is contemplated, then each is a conspirator and if the offense is carried out, each is guilty of the offense committed, whether he did any overt act or not. This rests on the principle that one who is present, encouraging, aiding, abetting, or assisting, or who is ready to aid, abet, or assist the active perpetrator in the commission of the offense is a guilty participant, and, in the eye of the law, is equally guilty with the one who does the act. Such community of purpose or conspiracy need not be proven by positive testimony. It rarely is so proved. The jury are to determine whether it exists and the extent of it from the conduct of the parties and all the testimony in the case."—*Morris v. State, supra.* "It may be inferred from the circumstances attendant upon the doing of the act, and from the conduct of the parties subsequent to its commission."—*Brindley v. State, supra;* Underhill, Crim. Evidence, §§ 492-494.

(7) The fact that this circumstance could be and may have been so explained as to destroy its probative force does not argue against its admissibility. The probative force of the evidence, in the light of any explanatory fact, was for the jury.

(8) The declaration testified to by Mrs. Tinsdale appears to have been made immediately after the shooting and before the witness Trimble reached the scene of the difficulty. The defendant had not yet gotten away from the place; he was then being assisted away by his wife and son. The circumstances here are such as that it may, with reasonable certainty, be affirmed that the declaration was produced by and instinctive upon the occurrences to which it related, rather than a retrospective narration. Otherwise stated, the declaration is so intimately related in time and occasion to the major fact as to constitute a part of the one occurrence, and was admissible as of the res gestæ.—*Nelson v. State,* 130 Ala. 83, 30 South. 728; *Lundsford v. State,* 2 Ala. App. 38, 56 South. 89; *James v. State,* 12 Ala. App. 16, 67 South. 773; *White v. State,* 195 Ala. 681, 71 South. 452.

(9) If the defendant at the time of the killing was in collusion with another to take the life of the deceased and killed deceased in *consequence thereof,* the defendant would not be free from fault, and therefore could not justify under the doctrine of self-defense.—*Griffin v. State,* 165 Ala. 48, 50 South. 962; *Crawford v. State,* 112 Ala. 1, 21 South. 214.

(10) Charge 2, given at the instance of the state, in view of some of the tendencies of the evidence, was not abstract. The charge was properly given.

(11) The sixth charge, given at the instance of the solicitor, is in this language: "Malice may be presumed from the use of a deadly weapon, such as a loaded pistol."

In Foster's Criminal Law it is said: "In every charge of murder, the fact of killing being first proven, all the circumstances of accident, necessity, or infirmity, are to be satisfactorily proven by the prisoner, unless they arise out of the evidence produced against him; for the law presumeth the fact to have been founded in malice, until the contrary appeareth, and very right it is that the law should so presume."

Sir Wm. Blackstone: "We may take it for a general rule that all homicide is malicious, and of course amounts to murder, unless when justified, excused, or alleviated into manslaughter; and all the circumstances of justification, excuse, or alleviation

it is incumbent on the prisoner to make out to the satisfaction of the court and jury."—4 Blackstone's Com. 201.

The Supreme Court: "That every one must be held to intend the known consequences of his international acts, is a recognized canon of accountability and of municipal law. Malice, as an ingredient of murder, is but a formed design, by a sane mind, to take life unlawfully, without such impending danger, to be averted thereby, as will render it excusable, and without such provocation as will repel the imputation of formed design. Hence, when life is taken by the direct use of a deadly weapon, the canon, stated above, comes to its aid; and, if there be nothing else in the transaction—no qualifying or explanatory circumstance—the conclusion is irresistible, that the killing was done pursuant to a formed design; in other words, with malice aforethought; for malice, in such connection, is but the absence of impending peril to life or member, which would excuse the homicide, and of sufficient provocation to repel the imputation of its existence."—*Hadley v. State,* 55 Ala. 36.

"Malice may arise on the instant, and from the use of a deadly weapon whereby one intentionally takes the life of another the law raises a prima facie presumption that the killing was done maliciously *unless the circumstances of the killing disprove malice.*"—*Dixon v. State,* 128 Ala. 57, 29 South. 623.

"Where one *intentionally* kills another with a deadly weapon, there is a formed design to kill, and the law presumes malice, unless the evidence which proves the killing rebuts the presumption. Whether the 'formed design' to take life is the offspring of the elements that constitute murder in the first degree, that is, willful, deliberate, malicious, and premeditated, or from the facts which constitute murder in the second degree, or from sudden passion upon sufficient provocation, or from self-defense, is a question of fact for the jury acting under the presumptions of law from the facts as declared and instructed by the court.— *Burton's Case,* 107 Ala. 129, 18 South. 284.

"In our more recent rulings upon the subject, we departed from the definition of the term 'formed design,' as it was given in the case of *Mitchell v. State,* 60 Ala. 26. It is now held, in effect, that the intentional taking of life with a deadly weapon implies a formed design to take the life, whether it be a willful, malicious, deliberate, and premeditated killing, constituting murder in the first degree; or malicious, merely constituting murder

[Newsom v. The State.]

in the second degree; or without malice, constituting manslaughter; or whether the homicide was excusable or justifiable. The instruction, therefore, that when one intentionally kills another with a deadly weapon, the law presumes that it was maliciously done, and was done with a formed design to take life, unless the evidence which proves the killing shows the excuse or extenuation, was free from error."—*Miller v. State*, 107 Ala. 57, 19 South. 37.

"It is undoubtedly a canon of the law that, 'If one man intentionally shoots another with a gun, or other deadly weapon, and death ensues, *the law* implies or presumes malice;' and we may add, a 'formed design' to take life; and it imposes upon the slayer the burden of rebutting this presumption by other proof, unless the evidence which proves the killing rebuts the presumption. * * * Whenever there are any facts testified to on a trial for murder, and which are *necessary and are relied upon to sustain* the charge of murder, and a jury could legally infer from the facts *proving the offense* that the defendant acted in self-defense, or the homicide was the result of sudden passion engendered by sufficient provocation, and without malice, it is error to charge the jury as to the presumptions arising from the use of a deadly weapon, without accompanying such charge with the further statement, 'unless the evidence which proves the killing rebuts the presumption.' When the facts which prove the killing do not tend to rebut the presumption which the *law raises* from the use of a deadly weapon, then it becomes incumbent on the defendant by other evidence to rebut the presumption, and failing to meet this burden the presumptions of law are conclusive against him." —*Hornsby v. State*, 94 Ala. 66, 10 South. 522.

By this court in the recent case of *Jones v. State*, 13 Ala. App. 10, 68 South. 690: "Malice is an essential ingredient of murder. * * * As a rule, it is an inferential fact not susceptible of positive proof. It arises by inference from other facts proven, and in the trial of cases of homicide is to be drawn by the jury, unless the evidence shows, without room for adverse inference, that the killing was intentional, and was accomplished by the use of a weapon, which, as a matter of law, may be pronounced a deadly weapon. Where the killing results from the intentional use of a deadly weapon— * * * a weapon which the court may pronounce such as a matter of law, such as a gun or pistol of sufficient * * * carrying force to produce death—and

the evidence which proves the killing does not at least afford room for an inference rebutting the presumption of malice arising from the use of such weapon, it is then incumbent on the defendant to rebut that presumption by other evidence. If he fails in this burden, the presumption is conclusive against him, and no duty devolves upon the trial court to instruct the jury on any degree of homicide less than murder. * * * But, where the evidence which proves the killing rebuts the presumption of malice, or affords room for an inference to be drawn by the jury that tends to rebut the presumption, or where the evidence is: wholly circumstantial, and the character of the weapon, and the circumstances attending the homicide, and the motive therefor rest in inferences to be drawn by the jury from the circumstances proven, the court should give in charge to the jury the law on all degrees of intentional homicide. * * * The reason for this is clear. In such cases malice, which is an essential ingredient of murder, must be inferred from the character of the weapon used, and the circumstances attending the homicide, and, where there is evidence justifying an inference that the killing was not prompted by malice, or where the nature and character of the weapon and the circumstances attending the homicide rest in inference, it is the province of the jury, and not of the court, to pass on the evidence and entertain the inferences of malice or not, as, in their judgment, the whole evidence may warrant."

These holdings demonstrate the correctness of the principle stated in the charge that malice may be presumed from the use of a deadly weapon. The charge does not undertake to apply the principle to the testimony in the case, nor to state under what circumstances the law raises the presumption of malice from the use of such weapon, nor when it is the province of the jury to entertain the presumption. In short, the charge is but a bald statement of a legal principle that may or may not be applicable to the facts of the case, and cannot be said to be erroneous.— *Robinson v. State,* 183 Ala. 43, 62 South. 837; *O'Donnell v. Rodiger,* 76 Ala. 226, 52 Am. Rep. 322.

(12) If the defendant desired to have the principle applied to the testimony in the case, it was his right and duty to invoke the court's consideration of the matter by requesting appropriate written charges.—*White v. State, supra; Murphy v. State,* 14 Ala. App. 78, 71 South. 967.

(13) The evidence offered by the state and upon which the prosecution relies to prove the killing shows no more than that

the defendant killed Hatchett by shooting him with a pistol, with tendencies that the shooting occurred following a quarrel and personal rencounter between the parties sought by the defendant by preconcert with others. The only evidence tending to show excuse, paliation, or justification was offered by the defendant. In view of this evidence, it was permissible for the court to instruct the jury with reference to the presumption of malice arising from the fact of an intentional killing with a deadly weapon without accompanying the instruction with the qualification "unless the evidence which proves the killing show excuse or extenuation."—*Allen v. State*, 148 Ala. 590, 42 South. 1006. The qualification in such charge when the evidence "which shows the killing shows or tends to show no paliation or excuse" would be abstract. In *Allen's Case, supra,* the following charge was held properly refused: "While a deliberate killing with a deadly weapon is presumed to be malicious, but, if the facts and circumstances attending the killing are in evidence, the presumption must be drawn from the whole evidence, and not from the nature of the weapon only," the court observing: "Aside from the facts that the charge is awkwardly constructed, we are of the opinion that it invades the province of the jury. Furthermore, in cases like this, the intentional use of a deadly weapon by the slayer may afford sufficient ground upon which to rest the presumption of malice, unless the evidence which proves the killing shows the excuse or extenuation. * * * The state's evidence tended to show a homicide by the intentional and deliberate use of a deadly weapon and without the semblance of justification or extenuation. The only evidence tending to show excuse or paliation was offered by the defense, and its worthiness of belief by the jury should have been hypothesized in the instruction.

(14) Furthermore, the court in the oral charge fully stated the rule, and it was the duty of the jury to take the oral and written charges as constituting the charge of the court.—*Robinson v. State*, 183 Ala. 43, 62 South. 837.

The other charges given at the instance of the solicitor stated approved propositions and were properly given.—(Charge 1) *Walker v. State,* 117 Ala. 42, 23 South. 149; (charge 3) *Hicks v. State*, 123 Ala. 15, 26 South. 337; *Howard v. State,* 151 Ala. 22, 44 South. 95; (charge 5) *Wright v. State,* 148 Ala. 596, 42 South. 745; *Dell v. State,* 170 Ala. 16, 54 South. 116.

(15) Charge 26, after stating the principle, "Whether or not the homicide is the offspring of malice is the characteristic which

distinguishes murder and manslaughter," adds the language of the Supreme Court used arguendo to sustain this statement of the law, to wit: "In consideration of the infirmities of humanity, the law regards a sudden transport of passion, caused by adequate provocation, as sufficient to rebut the imputation of malice which would otherwise arise. *In such case,* the law imputes the homicide to inherent frailty instead of malice or formed design."

The charge, as thus drawn, besides being argumentative, by the use of the words, "in such case the law imputes the homicide to inherent frailty instead of malice or formed design," was calculated to mislead the jury to the conclusion that the case at bar was, in the opinion of the court, such a case, and was properly refused.

(16) In view of the conflicting evidence in this case as to the circumstances attending the killing, charge 29 was properly refused.—*Matthews v. State,* 192 Ala. 1, 68 South. 334; *Carroll v. State,* 12 Ala. App. 69, 68 South. 530.

While able counsel representing appellant do not insist that error was committed in the refusal of other charges to the defendant not heretofore considered, we have examined each of them, and find no reversible error in their refusal. Some are duplicates of given charges; others are argumentative, and others incorrect statements of the law.—*Robinson v. State, supra.*

(17) In view of the evidence showing that the defendant killed the deceased by shooting him with a pistol which he had concealed about his person, and on which defendant admits he had his hand when the deceased first struck him, and the tendencies of the evidence that a wordy altercation between the defendant and the deceased took place before any outcry was heard or shots fired, and the tendencies of the evidence that the defendant and others were acting by preconcert to intercept the deceased on his usual rounds in delivering the evening paper, the case was one for the jury, and the affirmative charge was properly refused. And for like reasons the rulings of the court on the motion for new trial might well be sustained.—*Cobb v. Malone,* 92 Ala. 630, 9 South. 738; *Southern Ry. Co. v. Kirsch,* 150 Ala. 659, 43 South. 796.

We have examined the evidence offered in support of the grounds of the motion for new trial based on the alleged unwarranted separation and misconduct of the jury and hold that it

excludes any imputation or inference that the jury or any member thereof was in any wise tampered with, or guilty of any irregularity or misconduct warranting the granting of a new trial.—*Nabors v. State,* 120 Ala. 327, 25 South. 529; *Butler v. State,* 72 Ala. 179.

After what has been said above, disposing of the questions discussed in the original brief of counsel for appellant, an additional brief was filed, and we deem it proper to notice some of the authorities therein cited and some of the questions argued.

What is said in *Ogletree v. State,* 28 Ala. 699, an indictment for assault with intent to murder, is not applicable here, for the reason, as stated by the court in that case: "The defendant is indicted not merely for what he has effected, but for what he intended to effect; not only for his act, but for the intent with which he did that act. 'The charge against him is that, in consequence of a particular intent, reaching beyond the act done, he has incurred a guilt beyond what is deducible merely from the act wrongfully performed.' * * * The particular intent is essential to constitute the felony. The class to which this case belongs, is clearly distinguished from that class in which a general felonious intent is sufficient to constitute the offense. The doctrine of an intent in law, applicable to the latter class, is not applicable to the former. And in such a case as the present, the defendant ought not to be convicted of the felony, unless his intent in fact was the same that is laid in the indictment, * * * and in a case like this, any charge is erroneous which selects from the mass of evidence in the case a portion only of the facts disclosed by the testimony, and declares that, if the facts thus selected are proved, 'The law presumes that the act was malicious,' and that 'he intended to kill,' " etc. See, also, *Walls v. State.* 90 Ala. 621, 8 South. 680.

(18) There is other evidence tending to show conspiracy, aside from that previously noted, some of the state's testimony tending to show that the defendant was not alone when he crossed the bridge going in the direction of the place where the homicide occurred; that where the defendant and the person accompanying him separated at the street corner just before the defendant reached the place of the homicide, and as we have shown, Trimble identified one of the voices in the conversation detailed as that of defendant. When these circumstances are coupled with the fact that hardly before the sound of the shots that sent

Hatchett to his death had died away we find a man with a pistol in his hand standing over Hatchett, who was then in the very throes of death from the wounds inflicted by the defendant, inquiring as to what disposition he should make of the mortally wounded and dying man, and the defendant replying: "I don't care what you do with the s——n of a b——h. You can kill him as far as I am concerned," and when the witness Trimble came upon the scene the man who was standing there over the victim declared that he was guarding him, these circumstances reasonably pointing to the conclusion of a conspiracy and clearly bring the case within the rule declared by the authorities cited and relied on by appellant.—*Hart v. Hopson*, 52 Mo. App. 177; *Benford v. Sanner*, 40 Pa. 9, 80 Am. Dev. 545; *Driggers v. United States*, 21 Okl. 60, 95 Pac. 612, 129 Am. St. Rep. 823-831, 17 Ann. Cas. 66; Id., 1 Okl. Cr. 167, 95 Pac. 612, 129 Am. St. Rep. 823.

Counsel for appellant seem to have overlooked the fact that the testimony of Trimble tends to show that the first conversation detailed was between the defendant and the man standing guard over his victim.—*Morris v. State, supra.*

The first charge insisted on in the additional brief as being erroneously refused is substantially covered by given charges 5, 53, and 56.

(19) Charge 3 is involved, in that it undertakes to assert the doctrine of real imminent peril, combined with that of apparent imminent peril, and by the use of the phrase, "and I charge you that it is immaterial whether the defendant had an honest belief in such peril as hereinabove set out and the law will make no inquiry as to its existence," the meaning of the charge is rendered uncertain.

(20) Charge Y entirely ignores the doctrine that before one can shoot to the death he must be in imminent peril, real or apparent, of losing his life or suffering grievous harm to his person.—*Parris v. State*, 175 Ala. 1, 57 South. 857; *Wilson v. State*, 140 Ala. 43, 37 South. 93.

(21) For all that appears in the record, counsel for defendant did not consume the time allotted to them by the court for argument of the case. We recognize the necessity for the rule that the question of limiting argument is a matter that must be left to the discretion of the trial court, yet the Constitution guarantees to the accused in all cases ample time and opportunity for

counsel to fully present his defense, and if it was here made to appear that the appellant's counsel consumed the time allotted to them without being able to fully and fairly argue the case, and on request further time was refused by the court, a different question would be presented.—*Yeldell v. State*, 100 Ala. 26, 14 South. 570, 46 Am. St. Rep. 20. On the showing here made we cannot say that the constitutional rights of the accused were impinged.

We find no error in the record, and the judgment must be affirmed.

Affirmed.