# Wright *v.* The State.

### *Assault With Intent to Murder.*

(Decided Jan. 16, 1907.   42 So. Rep. 745.)

1. *Homicide; Assault with Intent; Evidence.*—On the question of intent, it is admissible to show by the physician who attended the wounded party his condition, the character of the wounds and that some of them were sewed up by him; also to show that he was bloody after the fight, and how long he was in the hospital and confined to his bed as the result of his wound, all of which testimony relates to the character of the wound.

2. *Criminal Law; Striking Out Evidence.*—Where the court permitted a witness to testify that defendant had said there was going to be trouble about there some day, and it was shown by the same witness, on cross examination, that such statement had reference to people getting off the train at that point, drinking and cutting up, and no special reference to any one by defendant, the statement objected to should have been stricken out.

3. *Same; Instruction; Credibility of Witnesses.*—A charge asserting that the interest the defendant has in the case may be weighed by the jury when considering defendant's testimony, is proper.

[Wright v. The State.]

4. *Homicide; Assault with Intent; Self Defense; Instructions.*—A charge asserting that although the jury find that at the time of the assault, defendant was in imminent danger, yet if he entered into the difficulty willingly and was without fault in bringing it on, he could not avail himself of a plea of self defense, is correct.

5. *Criminal Law; Reasonable Doubt; Instructions.*—A doubt, to justify an acquittal, must be reasonable, must be an actual and substantial doubt, not a mere possibility or speculation. A reasonable doubt is not a mere possible doubt, because most things relative to human affairs and depending on moral evidence, are open to some imaginary or possible doubt. Both these are correct propositions of law.

6. *Homicide; Assault with Intent; Instructions; Intent.*—In cases of assault with intent to take life, the law presumes malice from the use of a deadly weapon, and the onus of repelling the presumption is on the defendant, unless the evidence which proves the assault raises the presumption that the assault was perpetuated without malice, and wherever malice is shown, and is unrebutted by the circumstances, of the assault, or by other facts in evidence, there can be no conviction for any less offense than assault with intent to murder. This pretermits an intent on the part of defendant to take life and is erroneous.

7. *Same; Self Defense; Apparent Danger; Duty to Retreat; Instructions.*—It is not necessary that there be actual danger to justify the taking of human life, but if the jury are satisfied that the circumstances were such as to impress the defendant with a reasonable belief that the cutting was necessary to prevent death or great bodily harm to himself, then the jury may acquit him, unless they believe he was not free from fault in bringing on the difficulty. This charge is erroneous in pretermitting defendant's duty to retreat if he could do so without increasing his peril.

8. *Criminal Law; Confused Instructions.*—A charge which refers to the person as the "deceased" where there was no evidence of any death, and where the person assaulted testified, is confused and properly refused.

9. *Homicide; Self Defense; Freedom from Fault; Burden of Proof; Instruction.*—A charge that under the evidence, the burden is on the State to show that the defendant was not free from fault in bringing on the difficulty, assumes that defendant has shown that he was in imminent peril of life or great bodily harm, and could not retreat without increasing his danger. The burden is not on the state until such facts are shown

[Wright v. The State.]

*ᵣy defendant, and in this case, it was a qeustion for the jury whether he had shown such facts.*

APPEAL from Walker Law and Equity Court.

Heard before HON. T. L. SOWELL.

The defendant was indicted, tried, and convicted for an assault with intent to murder Jack Harris, and his punishment fixed at two years in the penitentiary.

Upon the trial Dr. Stovall was called as a witness, and testified that he was a practicing physician and had been so for a number of years; that he knew Harris, and was called to see him about June 10, 1905, in Walker county, Ala.; that when he got there he examined him, and found that he was cut by a knife or some sharp instrument in about 14 or 15 places; that some of the wounds were painful, and some light. He then proceeded to describe the various wounds on the body. He was permitted, over the objection of the defendant, to testify that he sewed up part of the wounds, and was also permitted to testify that Harris was not bleeding very much when he got to him, but that he had been bleeding a good deal, and was very bloody. He was also permitted to testify that Harris was not very much exhausted when he reached him, but was very weak from loss of blood. The witness Meyers was also allowed to testify that just after the cutting Harris was very bloody.

The witness Steadman testified that, "about one-quarter of a mile from where the cutting occurred, the defendant came by my house between sundown and dark, and while talking to me said that he had cut Harris' throat, and stated, further: 'I told you there would be trouble down here.'" The solicitor then asked him if, before the difficulty occurred, witness had ever heard defendant say anything about there being trouble there about Hilliard. There was objection to the question, which was overruled, and witness answered: "We were talking one day a short while before it occurred, and defendant said that there was going to be some trouble about there some day." On cross-examination the witness testified that, some month or two before the difficulty occurred, he and the defendant were together and

were discussing the facts that several people had gotten off the train at Hilliard, drinking and cutting up, and the defendant remarked in that conversation that, if such was not stopped, there would be trouble there some day. Whereupon the defendant moved the court to exclude what witness had said about defendant's predicting that there was going to be some trouble about there some day. The court overruled the motion, and the defendant excepted.

The testimony of the state tended to show that the defendant and Harris had gone from Jasper to Hilliard on the train, and, after getting off the train at Hilliard, were "walking along jowering," as the witnesses put it, when one or the other proposed a fair fight, and the other agreed, whereupon Harris put down his bundles, held up his hands and said he had no weapon in them, and defendant also stated that he had no weapon, but immediately rushed upon Harris and cut him with a knife some 14 or 15 times. The testimony of the defendant tended to show an assault by Harris on him; that he backed some 8 or 10 steps, until he got up against a tree that had fallen down and could not go any further back; that thereupon Harris threw his right hand back and ran it under his overalls, and said that he would shoot the defendant, whereupon defendant threw down his bundles, jerked out his knife, and commenced cutting him.

At the request of the state the court gave the following charges: "(1) The court charges the jury that the interest the defendant has in the case may be considered by them in weighing his own testimony. (2) The court charges the jury that, even though they should find from the evidence that, at the time Cebe Wright cut John Harris, he (Cebe Wright) was in imminent danger of his life, or of suffering great bodily harm, or that the circumstances attending the assault were such as to impress the mind of a reasonable man that the defendant was in actual danger, yet if they also believe from the evidence beyond a reasonable doubt that the defendant entered into the difficulty willingly, and he was not without fault in bringing on the difficulty, then his plea of self-defense must fail. (3) The court charges the

jury that in cases of assault with intent to murder the law presumes malice from the use of a deadly weapon, and casts on the defendant the onus of repelling the presumption, unless the evidence which proves the assault shows also that the assault was perpetrated without malice; and whenever malice is shown, and is unrebutted by the circumstances of the assault or by other facts in evidence, then there can be no conviction for any less offense than assault with intent to murder. (4) The court charges the jury that a doubt, to justify an acquittal, must be reasonable. It must be an actual and substantial doubt, not a mere possibility or speculation. A reasonable doubt is not a mere possible doubt, because most things relative to human affairs and depending on moral evidence is open to some possible or imaginary doubt."

The defendant requested a number of charges, the following of which the court refused: "(14) It is not necessary that there should be actual danger of death or bodily harm in order to justify the taking of human life; but, if the jury are satisfied from all the evidence in the case that the circumstances attending the cutting were such as to impress the defendant with a reasonable belief that at the time of the cutting it was necessary in order to prevent death or great bodily harm to his person, then the jury may acquit the defendant, unless they further believe that the defendant was not free from fault in bringing on the difficulty." "(16) If the accused, with no intention of bringing on the difficulty, approached the deceased in a peaceable manner, and the deceased made the first hostile demonstration by drawing or attempting to draw a weapon, or by appearing to do so, the appearance coming within the rule declared above, and if the accused was in such proximity to the deceased as to render it hazardous to attempt flight, or if the assault was made with a deadly weapon, and was open and direct and in perilous proximity, then the law could not require the accused to endanger his life or safety by attempting flight. (17) I charge you, gentlemen of the jury, that in this case, under the evidence, the burden is upon the state to show that the defendant was not free from fault in bringing on the difficulty."

"(21) The court charges you, gentlemen of the jury, that it is not necessary that there should be actual danger of death or great bodily harm in order to justify the taking of human life; but, if the jury are satisfied from all the evidence in the case that the circumstances at- . tending the cutting were such as to impress the defendant with a reasonable belief at the time of the cutting that it was necessary in order to prevent death or great bodily harm to his person, then they must acquit the defendant."

RAY & LEITH, for appellant.—The court erred in permitting witness Stedman to testify as to what the defendant said as to there being trouble at Hilliard some day.—*King v. The State*, 89 Ala. 146; 140 Ala. 103. The court erred in refusing to give charge 2 requested by the defendant.—*Kennedy v. The State*, 140 Ala. 1. Charge 16 should have been given.—*DeArman v. The State*, 71 Ala. 351. Charge 14 was a proper charge.—*Kennedy v. The State, supra; Thomas v. The State*, 106 Ala. 22.

MASSEY WILSON, Attorney General ,for State.—The court committed no error in giving charge 1 for the state, neither was there error in charge 2.—1 Mayfield's Digest, 807. Charge 3 was correct.—*Harkness v. The State*, 129 Ala. 71; *Sherrill v. The State*, 128 Ala. 5. Charge 4 for the state was correct.—*Pitts v. The State*, 140 Ala. 71. Charge 14 was properly refused.—*Goodwyn v. The State*, 102 Ala. 87; *Webb v. The State*, 100 Ala. 47. Defendant's charge 17 was also properly refused.—*Pugh v. The State*, 132 Ala. 1. The court did not err in reference to the admission of Stedman's testimony.—*Ford v. The State*, 71 Ala. 396; *Evans, v. The State*, 62 Ala. 6; *Jones v. The State*, 76 Ala. 8; *Anderson v. The State*, 79 Ala. 5.

ANDERSON, J.—There was no error in permitting the state to prove by the physician attending the injured party, his condition, the character of the wounds, and that some of them were sewed up by him. This evidence related to the character of the wounds inflicted, and was a question to be considered by the jury in ascertaining

the intent with which they were inflicted. So, too, it was competent for the state to show how long the assaulted party was in a hospital and was confined to his bed as a result of said wounds. For the same reason the state was properly permitted to show that Harris was bloody after the fight.—*Brown v. State,* 142 Ala. 287, 38 South. 268; *Meredith v. State,* 60 Ala. 441; *Jackson v. State,* 94 Ala. 89, 10 South. 509.

The witness Steadman clearly showed upon cross-examination that what the defendant told him about trouble at Hilliard was in no sense a threat against Harris, and should have been excluded.

There was no error in giving charges 1, 2, and 4, requested by the state.

The trial court erred in giving charge 3, requested by the state. It pretermitted an intent on the part of the defendant to take life, a necessary element of the offense. ·

Charge 14, requested by the defendant, was properly refused. It is just like a charge that was condemned in the case of *Goodwin v. State,* 102 Ala. 87, 15 South. 571, and unlike the one held good in the *Kennedy Case,* 140 Ala. 1, 37 South. 90, in that it asks for an acquittal and pretermits the defendant's duty to escape, if he could do so without increasing his peril. An acquittal was not asked in the *Kennedy Case, supra.*

Charge 16, requested by the defendant, was properly refused. If not otherwise faulty, it was confusing and misleading. It uses the word "deceased" several times, and there was no deceased. The party injured testified in the case, and the defendant was not indicted or tried for homicide.

Charge 17, requested by the defendant, was properly refused. The burden was not upon the state to show that the defendant was not free from fault in bringing on the difficulty until the defendant had shown that he was in imminent peril of life or great bodily harm and could not have retreated without increasing his peril.— *Pugh v. State,* 132 Ala. 1, 31 South. 727. The charge assumes that the defendant had shown these facts, when it was a question for the jury under the evidence in the case.

[Sanders v. The State.]

Charge 21, requested by the defendant, was properly refused. If for no other reason, it was bad in pretermitting the defendant's freedom from fault in bringing on the difficulty or willingly entering into the combat.

Reversed and remanded.

TYSON, C. J., and DOWDELL and McCLELLAN, JJ., concur.