23 So.2d 615

## SMITH v. STATE.
### I Div. 499.

Court of Appeals of Alabama.
June 19, 1945.

Rehearing Denied Aug. 7, 1945.

Wm. N. McQueen, Acting Atty. Gen., and Frank N. Savage, Asst. Atty. Gen., for the State.

Johnston, McCall & Johnston, of Mobile, for appellant.

210

RICE, Judge.

We quote the Attorney General: "The appellant was indicted by a grand jury of Washington County, Alabama, on March 28th 1944 for first degree murder for killing Eugene Smith, her husband, by cutting him with a razor. She was tried by a jury on May 8th 1944, and found guilty of manslaughter in the first degree and sentenced to serve imprisonment in the penitentiary for the term of five years." This appeal followed.

The facts, as developed by the testimony, are many and involved. Able counsel here representing the State and the appellant have filed elaborate briefs. But, keeping our opinion within any reasonable length, it would not be possible to extract from either of said briefs any satisfactory summary of the evidence.

So we will content ourselves by simply stating that it appears that appellant, a widow some 24 years of age, with two children, married Eugene Smith—now deceased—a widower, some 48 years of age, with four or five children, within a space of some seven weeks from the time of the death of her first husband.

They all lived together, after a manner, in the home of Eugene Smith, for some four years, until the union between appellant and Eugene Smith was fatally severed by a razor—an "old fashioned" razor—wielded by appellant, which razor not only severed said union, but well nigh severed Eugene's head from his shoulders. In the language of the dreams of spitefully unhappy married women, appellant literally "cut her husband's throat from ear to ear."

Her pleas on the trial were "not guilty," and "not guilty by reason of insanity."

As stated before, we will not undertake to summarize the sordid testimony. Let it suffice to say that it well tended to support appellant's plea of "not guilty"—that is, not guilty by reason of self-defense.

And this plea of hers was submitted to the jury under instructions which we think complete, correct, and proper. The jury were evidently much impressed, as is reflected in the verdict which they returned.

But the trial court omitted and refused to charge the jury on appellant's plea of "not guilty by reason of insanity"—this, we gather, because he took the view there was no evidence to sustain it. And we think he was correct in so doing. Seldom have we been permitted to read an abler brief on "insanity as a defense to crime" than the one submitted here on behalf of appellant by her distinguished counsel. But said brief, with all the ability which it manifests, omitted and omits a *vital* factor.

With the most persuasive logic—buttressed by unquestioned authority, i. e., decisions by our Supreme Court—appellant's counsel trace the domestic life of appellant and deceased from its hasty inception, through the four years of its tragic course, to its final, fatal, denounement, detailing instances of cruelty, abuse, and horrifying threats on the part of Eugene Smith toward appellant, with convincing argument that all such, cumulative over the years, might well cause appellant's mind to become unbalanced and irresponsible. And as a sort of "peroration," as it were, appellant's counsel closes his argument with this paragraph, viz.:

"We have set out briefly above the melancholy facts leading up to the fatal tragedy. It is a lurid story of a brutal and drunken husband, twice the age of his wife, jealous of every man, and suspicious of every circumstance and act of her life, driving her through three years of untold anguish, abysmal unhappiness and torturing hell. In addition to inflicting physical punishment upon her, he tore at the very heartstrings of her existence in depriving her of her baby, who, at the time of the killing, was only a year old. If it be true that mental disease sufficient to generate legal irresponsibility may be the product of sorrow, worry and inhuman abuse, then the Court indeed com-

mitted a grave error in refusing to submit to the Jury the issue of insanity in this case."

But counsel omit the *vital* factor, we referred to above, that is, *did* this treatment produce insanity?

■ The law is—and, by the way, the best statement of it that we have found was made by this court—that "a jury have no right to infer the existence of insanity from the existence of a cause which may have some tendency to produce it, unless there is some evidence before them that insanity actually followed as a result of the possible cause." Milford v. State, 2 Ala.App. 104, 57 So. 96, 97.

As was said by the Supreme Court of Indiana in Sawyer v. State, 35 Ind. 80: "If it were a case where a given effect *must* follow the cause, there would be force in the argument, because proof of the cause would be proof of the effect. But we know that the various causes that may tend to produce insanity very frequently fail to produce any such effect; and it seems to us that it is not competent to prove the existence of such exciting cause unaccompanied with some proof that the effect followed the cause. Indeed, a jury would not be authorized to find a man to be insane, without proof on the subject other than the fact that a cause existed that tended to (produce) insanity." Milford v. State, supra. And see Barnes v. State, 31 Ala.App. 187, 14 So.2d 242.

Here, we have searched the evidence with meticulous care. We find no word in same tending, even remotely, to show the actual insanity of the appellant at the time she admittedly cut and killed her husband, Eugene Smith.

■ It is true that State's witness Pearson Waite, who said he worked with and for the deceased Eugene Smith, at his home, at a Syrup Mill, on the morning of the day on which Eugene was killed in the afternoon, stated that appellant came to the Syrup Mill one time that day; and, in answer to the question: "Did she seem to be mad?", said: "Yes, sir, she seemed to be wrong some way or other." And, further: "It sorta seemed she was mad with me."

We regard the above as no testimony whatever that appellant was insane. See Rice v. State, 204 Ala. 104, 85 So. 437.

We repeat: The trial court refused without error the charges dealing with insanity.

But the judgment of conviction must be reversed. We will state why.

■ On the direct examination of Mrs. John Herring, a witness called on behalf of the State, this occurred:

"Q. Did you ever have any conversation with this defendant, Ethel Smith, in regard to Eugene Smith? A. That's right. I have.

"Q. When was that? A. Four or five months before Eugene was killed.

"Q. On this occasion what did she say about Eugene? A. She said she gave her first husband too much insulin and killed him."

Appellant's counsel immediately objected, and moved to exclude the witness' last answer. To the action of the court in overruling his motion (and objection) he reserved an exception.

We think the court's action was error, and highly prejudicial to appellant.

If what we have set out does not make it clear, it *is* clear, from a reading of the actual record, that what the witness was allowed, over proper objection, i. e., by motion to exclude—appellant could *not* have anticipated any such answer to the question which was put—to tell the jury was that appellant had told her she had "killed her first husband," i. e., murdered him. This she could not, legally, do.

■ As appellant's counsel well say: "It has long been the law of this State that evidence of a previous crime wholly disconnected with the one charged in the indictment is inadmissible in evidence. If evidence of a disconnected crime is inadmissible, a fortiori an admission of such a former crime wholly disconnected from the one charged in the indictment is inadmissible." See Robinson v. State, 5 Ala.App. 45, 59 So. 321; Gassenheimer v. State 52 Ala. 313; Mitchell v. State 22 Ala.App. 300, 115 So. 149.

It might be well to remark that, as bearing on the injuriousness, vel non, of this witness' testimony—allowed over appellant's strenuous protest—all the other pertinent testimony in the case was to the effect that appellant's married life with her first husband was pleasant in the extreme, and to the end. And that she denied vigorously the statement of the witness Mrs. John Herring.

In the main the case was well, carefully, and correctly tried.

212

But for the error we have pointed out we must, as stated above, reverse the judgment of conviction.

It is so ordered.

Reversed and remanded.

No appearance for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Frank N. Savage, Asst. Atty. Gen., for the State.