361 So.2d 1176 (1978)
Willie E. CAREY
v.
STATE.
6 Div. 742.
Court of Criminal Appeals of Alabama.
August 29, 1978.
James M. Jolly, Birmingham, for appellant.
William J. Baxley, Atty. Gen. and Eugenia D. B. Hofammann, Asst. Atty. Gen. for the State, appellee.
BOWEN, Judge.
The appellant was convicted for first degree murder and sentenced to life imprisonment. *1177 At trial the defense was one of insanity.
On appeal it is argued that the evidence is insufficient to support the conviction of first degree murder because there was no evidence to show that the killing was deliberate or premeditated. It is also argued that the evidence of insanity was conclusive.
The state proved a prima facie case of murder in the first degree committed by the appellant. Through the testimony of the brother of the deceased, the state proved that sixty-four year old Leon Negron was killed by a shotgun blast fired through the open front doorway of a house he and his brother, Damon, were repairing. Damon stated that he heard the blast, turned and saw his brother fall. He saw the appellant standing in the door holding a shotgun. The appellant did not say anything but stood there a short time and then "broke" and ran off. He was arrested in the company of a male companion approximately three blocks from the scene of the murder and shortly after its commission. When the appellant noticed the arresting officer he discarded the shotgun, which he had been carrying in a partially concealed fashion by his side.
As a defense witness, Alvannah Carey, the mother of the appellant, testified that in the early seventies she began to notice unusual conduct of her son. He would leave work early, burn the lights in his room all night long and cover up his head. He stayed by himself and heard voices. He complained that the back of his head and neck hurt and slept a lot. He was treated at the Smolian Clinic and at the University Hospital in Birmingham, Alabama. Mrs. Carey testified that whenever the appellant had any money he would drink but that he did not drink until he became drunk or intoxicated.
The appellant's brother, Flemon Robert Carey, testified that the appellant "used to go through a lot of, you know, emotional change when he would get under the influence of alcohol and drugs . . . . and be a Dr. Jekyl and Dr. Hyde sort of thing"; that he was under a lot of emotional pressure and unable to cope with life and was mentally unstable. Robert stated that his brother was taking drugs and would "drink most anything and take most anything".
Arthur Parker, a Birmingham attorney, testified that he had represented the appellant and had filed motions to have the appellant's mental condition evaluated based on the difficulty he had in communicating with his client and the mental difficulties the appellant was experiencing.
The appellant testified in his own behalf and denied any knowledge of the murder, the victim, or the shotgun. During the day he and a companion, Andrew Welch, purchased and consumed three bottles (fifths) of wine prior to meeting another friend and consuming two more "fifths" of wine.
Dr. James L. Thomas, a physician with the University of Alabama of Birmingham Medical Center, Department of Psychiatry, testified as to the appellant's mental history and first saw him on May 22, 1974, at the Smolian Clinic. He diagnosed the appellant as an acute schizophrenic, "acute" meaning that the illness "came on quickly and was a short duration". Dr. Thomas testified that although schizophrenia is "treatable" it cannot be "cured"; treatment may result in remission of the illness or the disease may progress to be "a chronic condition that never goes away". Dr. Thomas did not have an opinion as to whether the appellant was insane on May 8, 1975, the date of the murder. He stated that when he last saw the appellant on June 27, 1974, "it was an acute episode that responded to treatment in a positive fashion, and, when he left the hospital, most of the symptoms of schizophrenia were no longer present". However Dr. Thomas "would expect that there would be additional similar occurrences of the same illness in the future".
Three months after the murder, in August of 1975, the appellant was examined by Dr. Brantley E. Blankenship who practiced psychiatric medicine and who was on the staff of the Department of Psychiatry of the University of Alabama Medical Center in Birmingham. At that time Dr. *1178 Blankenship found the appellant well-oriented and without evidence of psychosis and noted that his mental status at the time of the crime was unknown. Later, in December of 1975, after a second request for a determination of competence, the appellant was determined to be "within the psychotic range" and committed, by court order, to a state hospital "until restored to his right mind". Dr. Blankenship was not asked and did not express any opinion on the sanity of the appellant at the time of the crime.

I
The concurrence and coexistence of willfulness, deliberation, malice and premeditation essential to constitute murder in the first degree are a matter of inference from all the facts and circumstances of the particular case. Their concurrence and coexistence are not facts to which a witness or any number of witnesses can testify. Coats v. State, 253 Ala. 290 at 294, 45 So.2d 35 (1950). It is well settled in this state that unless the circumstances surrounding a killing indicate otherwise, malice is presumed from the use of a deadly weapon. For numerous cases on this point see 11 Alabama Digest, Homicide. While the motive for a killing is always a proper subject of proof, it is not necessary nor indispensable to a conviction in a homicide case nor is it an element of the burden of proof resting on the prosecution. Rice v. State, 250 Ala. 638, 35 So.2d 617 (1948); Tate v. State, 337 So.2d 13 (Ala.Cr.App. 1976). Additionally, in every murder prosecution, it is not necessary to prove that the defendant knew the person whom he killed. Hargett v. United States, 183 F.2d 859 (5th Cir. 1950).
The burden is on the accused to establish his insanity at the time of the killing by a preponderance of the evidence, Martin v. State, 119 Ala. 1, 25 So. 255 (1898), and to the reasonable satisfaction of the jury. Wingard v. State, 247 Ala. 488, 25 So.2d 170 (1946). "A jury has no right to infer the existence of insanity from the existence of a cause which may have some tendency to produce it, unless there is some evidence before them that insanity actually followed as a result of the possible cause." Milford v. State, 2 Ala.App. 104 at 107, 108, 57 So. 96, 97 (1911); Smith v. State, 32 Ala.App. 209, 211, 23 So.2d 615 (1945).
The law presumes the accused sane at the time of the crime. Boswell v. State, 63 Ala. 307 (1879). The rule that insanity once shown is presumed to exist only arises in cases where the insanity is continuing and permanent in its nature, or where the cause of the disorder is continuing and permanent. Cogbill v. State, 8 Ala.App. 223, 62 So. 406 (1913); Benton v. State, 31 Ala.App. 338, 18 So.2d 423, cert. denied, 245 Ala. 625, 18 So.2d 428 (1944).
"And it is a sound general rule that insanity at any particular time, if shown to be habitual and permanent in its nature, is prima facie presumed as a matter of law to exist at any future time; and alone from its existence at a later time a presumption of fact may arise of its existence at a given prior time. Murphree v. Senn, 107 Ala. 424, 18 So. 264; McAllister v. State, 17 Ala. 434, 52 Am.Dec. 180. But in the latter case it is clear that the probative value of subsequent insanity to show insanity at any prior time will depend upon (1) the nature and degree of the insanity shown, and (2) its nearness or remoteness in point of time to the act under consideration. In re Winch, 84 Neb. 251, 121 N.W. 116, 18 Ann.Cas. 903, and note, 905, collecting many cases; Waterman v. Whitney, 11 N.Y. 157, 170, 62 Am.Dec. 71; Grant v. Thompson, 4 Conn. 203, 10 Am.Dec. 119; Dickinson v. Barber, 9 Mass. 225, 6 Am.Dec. 58; Terry v. Buffington, 11 Ga. 337, 56 Am.Dec. 423; Shailer v. Bumstead, 99 Mass. 112; Dowie v. Driscoll, 203 Ill. 480, 68 N.E. 56; LaBau v. Vanderbilt, 3 Redf.Sur. (N.Y.) 384, 390, 412." Odom v. State, 174 Ala. 4, 9, 56 So. 913, 915 (1911).
A defendant does not, by evidence that he was "subject to spells of insanity from time to time", raise a presumption that he was insane when he committed the homicide so as to shift the burden of proving his sanity to the state. Talbert v. State, 140 Ala. 96, 37 So. 78 (1904).
*1179 There was no testimony that the appellant was suffering from that chronic condition of schizophrenia that "never goes away". The only evidence that the appellant was "insane" at the time of the commission of the crime was the testimony of the brother and mother of the appellant. Unusual or "weird" behavior alone cannot be equated with mental incompetency or insanity. McCune v. Estelle, 534 F.2d 611 (5th Cir. 1976). The jury had a right to consider the relationship of these witnesses to the appellant in weighing their testimony.
Applying the Alabama rule of mental capacity to commit a crime, the verdict of the jury convicting the appellant of first degree murder was well within its province. There was no sufficient showing that the appellant, at the time of the offense, was suffering a mind so diseased that either he could not distinguish between right and wrong as to the homicide with which he was charged or that he was unable to resist an impulse to commit the offense if solely produced by his mental disease. Parsons v. State, 81 Ala. 577, 2 So. 854 (1886); Johnson v. State, 56 Ala.App. 105, 108, 319 So.2d 725 (1975).
Three convictions for first degree murder have recently been overturned because there were no facts which would support a reasonable inference that the homicide was committed by a sane man as defined by law where the evidence of insanity was conclusive. Christian v. State, 351 So.2d 623 (Ala. 1977); Herbert v. State, 357 So.2d 683 (Ala. Cr.App.), cert. denied, 357 So.2d 690 (Ala. 1978). Most recently see Woods v. State, 8 Div. 46 (Ms. July 25, 1978). The evidence of insanity at the time of the offense in this case is far from being conclusive. This is not a case where the testimony of experts was arbitrarily ignored by the jury. Under these circumstances the issue of insanity was properly submitted to the jury.
We have searched the record on appeal in its entirety and found no error prejudicial to the rights of the defendant. Therefore the judgment of the trial court is affirmed.
AFFIRMED.
All Judges concur.