Appellant was charged by indictment with assault with intent to murder. At arraignment, in the presence of his attorney, he entered a plea of not guilty. The jury returned a verdict of guilty of assault and battery and fined appellant $500.00. The trial court adjudged appellant guilty of assault and battery, assessed a fine of $500.00 and as additional punishment sentenced him to a term of six months imprisonment in the County jail. Appellant gave notice of appeal, sought and obtained a free transcript, and trial counsel was appointed to represent him on this appeal.
Appellant moved to exclude the State's evidence, requested the affirmative charge, and filed a timely motion for new trial. The affirmative charge was refused and the motions were denied.
In addition to the sufficiency of the evidence, appellant raised numerous points of error in the motion for new trial, including the trial court's refusal to give appellant's requested charges, evidentiary rulings adverse to appellant, and the following: (1) *Page 763 
The admission of evidence for impeachment purposes of the accused's bad general reputation for peace and quiet when appellant had not introduced evidence of his good character, and (2) the closing argument by the State was prejudicial in that it created ineradicable prejudice and bias against the appellant, necessitating a reversal.
The assault victim, Wilton Cox, testified that he and appellant, Billy Thompson, went to the Amvets Club in Covington County on March 13, 1977, around 4:30 or 5:00 p.m. The two men had been together since approximately 12:30 p.m. and had had two or three beers prior to going to the club. Mr. Cox testified that he and appellant sat at the bar drinking and that appellant bit him on the arm. This occurred around 8:00 or 8:30 p.m. Mr. Cox told appellant not to bite him again and appellant "crowned him one in the nose." The victim testified that he then hit appellant and they fought. Another customer, Larry Bennett, came up and "got a hold of Billy and was trying to hold him, but he couldn't."
Appellant then pulled a knife and cut Wilton Cox, who testified that he tried to stay out of his way, but appellant kept swinging. The victim was on the floor behind a table and the bartender, Chester Kirksey, hit appellant in the head with a night club. Appellant then walked out of the club.
Mr. Cox testified that Evon Williamson helped him up and they went outside, going to the hospital. Appellant was outside with Larry Bennett and Cox hit him again. He was then taken to the hospital.
The victim testified that he was cut five times and treated at the hospital. He missed a week's work. He stated it took him about six weeks to recover from the knife wounds.
On cross-examination, Cox testified that he and appellant had called two girls in Pensacola earlier that day to "set up a date" for appellant. They drank beer and some whiskey before going to the Amvets Club, then drank mixed drinks. The victim testified that he and appellant were first cousins.
Larry Bennett testified for the State that when he arrived at the Amvets Club around 7:30 p.m., appellant and Cox were seated at the bar and appellant was asleep or passed out with his head on the bar. Later he heard a noise, saw "licks" exchanged between appellant and Cox and went over to try to break it up. He grabbed appellant, but the two men continued fighting. He testified that he saw appellant with a knife in his hand, swinging it at Wilton Cox. Both men were swinging at each other, then the bartender hit appellant with a stick. Cox fell over in the booth and appellant went out.
Bennett testified that he went outside with appellant, trying to get him to leave. Wilton Cox came outside and "started fighting again," then Bennett took appellant to his mother's house. He did not see where Cox went. Appellant asked him to take him to Pensacola, but he refused.
The witness testified that he never saw Wilton Cox with a knife and that he saw where Cox had been cut, and he was bleeding. Appellant had a "real bad cut" in the top of his head.
Evon Williamson testified that he saw appellant and Wilton Cox scuffling but did not know Cox was cut until it was over. He saw the bartender hit appellant with a night stick, which broke up the fight. He then helped Cox up from the floor. Williamson testified that a woman named Charlotte Butler helped him get Cox up and to the car to carry him to a doctor.
Williamson testified that he took Cox to the hospital in his car, and Charlotte Butler went with them. He did not see any more fighting after they got outside and he did not see appellant again. Wilton Cox was "bleeding pretty bad."
Deputy Sheriff Howard Easley testified that he answered a call on March 13 at the Andalusia Hospital Emergency Room around 8:30 p.m. After talking with Wilton Cox, Deputy Easley attempted to locate appellant but was unable to do so. He testified that appellant was arrested in January, *Page 764 
1978, pursuant to a grand jury warrant.
Appellant, Billy Thompson, testified in his own behalf that in March, 1977, he was employed in Louisiana and lived in Red Level, Alabama, with his mother. On March 13, he went to the home of his first cousin, the victim Wilton Cox, around 11:00 a.m. The two men consumed two-thirds of a bottle of whiskey.
Appellant testified that while he was there, he called Sammie and Charlotte McCart, sisters who lived in Pensacola, and arranged for the women to meet him and Cox at the Amvets Club at 6:00 p.m. The men drank some beer, then went to the club around 4:00, where they continued drinking whiskey and beer.
Appellant testified that he went to sleep at the bar and the next thing he remembered was "a lick side of the head." He testified that he did not bite Wilton Cox. Blows were exchanged, and appellant stated he tried to get away and get out the door. Cox was hitting him all of this time. As he was going out the door, Cox staggered back into a booth and the bartender, Chester Kirksey, hit appellant. Appellant went outside, and Cox came out behind him and "jumped on [him] again." Appellant then left with Larry Bennett, who took him home. He testified that no officers came to his mother's house that night. Appellant returned to Louisiana three or four days later.
Deputy George Spzek testified on rebuttal for the State that he and Deputy Easley went to appellant's home on the night of March 13, but no one answered the door. He further testified that appellant's general reputation in the community was bad and, over appellant's objection, that his general reputation for peace and quiet was bad. Appellant moved for a mistrial, which was denied.
The State's evidence, primarily the testimony of the victim, tended to prove that appellant initiated an unprovoked attack on Wilton Cox after both men had been drinking heavily. This lead to a fist fight during the course of which appellant cut Cox five times with a knife. Two State witnesses testified that they saw the affray although neither saw appellant bite Cox. Larry Bennett saw appellant with a knife. The testimony was uncontroverted that Wilton Cox was unarmed.
Appellant's testimony on the other hand was that he was attacked by Cox while sleeping at the bar, and that he tried to get away during the entire incident. There was no other testimony that appellant attempted to leave until he was hit over the head by the bartender with a night stick.
Appellant contends there was no evidence upon which to base a conviction of assault with intent to murder or assault and battery. We disagree. The elements of the offense of assault with intent to murder are: (1) an assault and (2) an intent to murder. Lawhon v. State, 41 Ala. App. 577, 141 So.2d 205. Both intent and malice can be inferred from the use of a deadly weapon. Roberts v. State, 49 Ala. App. 729, 275 So.2d 709. And a conviction of assault and battery is valid as a conviction of a lesser included offense in an indictment charging assault with intent to murder. Wilson v. State, 53 Ala. App. 653,303 So.2d 153. There was ample evidence presented which, if believed by the jury, was sufficient to sustain a conviction of either assault with intent to murder or assault and battery. A fact may be as firmly established by the testimony of one witness as by an entire community. Hyman v. State, Ala.Cr.App.,338 So.2d 448.
Appellant contends that the "entire record clearly supports the proposition that the accused acted in self-defense," and that the submission of the case to the jury was error. Where the undisputed evidence clearly shows the victim to be at fault, the accused may be entitled to a directed verdict.Bishop v. State, 23 Ala. App. 109, 121 So. 455. In this case, however, the evidence that Wilton Cox was at fault was controverted by his testimony that appellant, not he, was the aggressor. This evidence, when coupled with the testimony of the other State's witnesses, tending to show that appellant *Page 765 
did not retreat until after he had cut the unarmed Cox five times with a knife, warranted a submission to the jury on the issue of self-defense.
Appellant further contends the trial court erred in allowing the State's rebuttal witness, Deputy Spzek, to testify that appellant's general reputation for peace and quiet was bad. Appellant had not introduced evidence of his good character on the issue of guilt or innocence. He had, however, testified and was therefore subject to impeachment as any other witness.Hunter v. State, Ala.Cr.App., 331 So.2d 406. Such impeachment may be accomplished by proving the bad general reputation of accused. Anderson v. State, 44 Ala. App. 388, 210 So.2d 436. Deputy Spzek was properly allowed to testify for impeachment purposes that appellant's general reputation in the community was bad. The general rule, however, prohibits the State from proving the accused's bad general reputation respecting a particular trait of character. Sorrells v. State, 44 Ala. App. 481, 213 So.2d 687. It was therefore improper to allow him to further testify that appellant's general reputation for peace and quiet was bad since appellant had not introduced evidence of his good character to prove his innocence.
Although the trial court permitted improper character evidence to be admitted against appellant, under the circumstances of this case it cannot be said that this error necessitates a reversal. The evidence was strong and uncontroverted that appellant cut Wilton Cox, who was unarmed, five times with a knife. Although the question of fault in bringing on the difficulty was at issue, there was ample evidence presented for the jury to decide that appellant was at fault. Under Rule 45 of the Alabama Rules of Appellate Procedure, the party alleging error must show that such error, if proven, was probably injurious. Kennedy v. State, 291 Ala. 62, 277 So.2d 878. It does not appear under the facts presented here that the evidence of appellant's bad general reputation for peace and quiet would have affected the outcome of this case. A reversal on this ground is not required.
Appellant would further urge this Court to reverse on the ground that the following remarks of the District Attorney during closing argument created such ineradicable prejudice and bias against appellant as to deprive him of a fair and impartial trial:
 "MR. McGILL: And then he got him in the corner over there and cut him down and left him on the floor.
"MR. JONES: I object to that.
"THE COURT: Overruled.
 "MR. JONES: He wasn't in the corner. We except to the ruling of the court, Bobbie.
* * * * * *
 "MR. McGILL: And the State is saying that after he cut him down and had his fun, he left.
 "MR. JONES: I am going to object to what the State is saying. It is improper.
"THE COURT: Overruled.
"MR. JONES: Except.
* * * * * *
 "MR. McGILL: But there has been testimony here, as to the character not as to the character but the reputation, his general reputation, and his reputation for peace and quiet and acts of violence.
 "MR. JONES: Your Honor, just to be safe, that I do have the error reserved in the record, I want to object to his remarks about the Defendant's character and reserve my exception.
"THE COURT: All right. Overruled.
 "MR. JONES: To the court's ruling and again move — well, you have overruled my objection to his argument, I was just trying to get it in the record. Thank you."
The first two remarks of the District Attorney were inferences drawn from testimony already in evidence while the third was merely a statement that certain character evidence had been presented. The argument was within proper limits. Counsel are allowed considerable latitude in drawing their deductions from the evidence *Page 766 
in argument to the jury. Binion v. State, Ala.Cr.App.,327 So.2d 729.
The refused charges, which stated correct principles of law, were adequately and substantially co0vered in given charges and the Court's oral charge to the jury.
A careful search of the record reveals no error injuriously affecting the substantial rights of appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.