[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 157 
The defendant was indicted and convicted for the capital murder of Ernest McCoy Payne and Jerry Leroy Simmons in violation of Alabama Code 1975, Section 13A-5-31 (a)(10) ("murder in the first degree wherein two or more human beings are intentionally killed by the defendant by one or a series of acts."). In accordance with the recommendation of the jury, sentence was fixed at life imprisonment without parole. Three issues are argued on appeal.
 I
The defendant contends that the fact that he was tried afterBeck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392
(1980), under the 1975 capital punishment statute as construed in Beck v. State, 396 So.2d 645 (1980), violated his constitutional rights in two ways. He argues (1) that he had a constitutional right to be tried under the statute as written or not at all, and, (2) that the curative judicial construction performed in Beck v. State, prejudiced his right to prepare his defense for trial.
Beck v. Alabama held that the sentence of death may not be constitutionally imposed after a jury verdict of guilt of a capital offense when the jury was not permitted to consider a verdict of guilt of a lesser included noncapital offense and the evidence would have supported such a verdict. The defendant argues that the trial court's constitutionally required action in instructing the jury on lesser included offenses violated his right to be tried under the death penalty statute as it existed at the time of the crime. That statute precluded any consideration of lesser included offenses. This contention that he had a vested right to be tried under an unconstitutional provision because it was a part of the statute in effect at the time the crime was committed was rejected in Dobbert v. Florida,432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).
This Court has repeatedly held that the Alabama Supreme Court acted constitutionally in Beck v. State; Edwards v. State, 1 Div. 335 (Ala.Cr.App., June 29, 1982); Clisby v. State, 6 Div. 576 (Ala.Cr.App., March 2, 1982). Interpretation of a state statute by the highest court in a state is "as though written into the (statute) itself." Poulos v. New Hampshire,345 U.S. 395, 402, 73 S.Ct. 760, 764-765, 97 L.Ed. 1105 (1953). State courts "have the final authority to interpret and, where they see fit, to reinterpret that state's legislation." Garner v.Louisiana, 368 U.S. 157, 168, 82 S.Ct. 248, 254, 7 L.Ed.2d 207
(1961). See also Wainwright v. Stone, 414 U.S. 21, 22-23,94 S.Ct. 190, 192-193, 38 L.Ed.2d 179 (1973) ("(W)e must take the statute as though it read precisely as the highest court of the state has interpreted it."); Smiley v. Kansas, 196 U.S. 447,455, 25 S.Ct. 289, 290, 49 L.Ed. 546 (1904).
The defendant was tried in meticulous compliance with the mandates of Beck v. State, and that decision is controlling. *Page 158 
 II
The defendant contends that because there was no evidence to show that the murders were committed with premeditation and malice he should not have been convicted of first degree murder.
Ricky L. Miller was the only eyewitness to the shooting to testify. He stated that he went with Jerry Simmons, Ernest McCoy Payne, Anthony Young and his brother, the defendant, to Anthony's trailer to "play some cards." At the trailer, the defendant and Jerry were playing cards. Payne was sitting at the kitchen table. Anthony and Miller were sitting on the sofa.
While they were there, Miller left the trailer to make a telephone call. When he returned, Anthony accused Miller of going to see his girlfriend. They "had a few words" and "ended up in a scuffle."
While they were still fighting, Miller heard a "popping noise" and saw McCoy falling. As Miller headed for the door he saw the defendant standing in the back of the hallway with a pistol in his hand. He heard another "pop" just a fraction of a second after he got out the door. When Miller was "about halfway down the side of the trailer" he heard a third gunshot.
Jerry Simmons and Payne each died in the trailer from a single .22 caliber gunshot to the chest. Both men were legally intoxicated at the time of their deaths. Anthony got shot in the hand.
The defendant was not "in any way taking part in the scuffle" between Miller and Anthony. The defendant was not "having any kind of conflict with anybody else in that trailer." Miller did not hear any threats being made against the defendant. Miller never saw Jerry Simmons or Payne with a weapon although he knew that Payne carried a pocket knife. No weapons were found at the scene.
Premeditation and deliberation in the law of homicide are synonymous terms meaning simply that the accused, before he committed the fatal act, intended that he would commit the act at the time that he did and that death would result. It does not mean that the accused "must have sat down and reflected over it or thought over it for any appreciable length of time."White v. State, 236 Ala. 124, 125, 181 So. 109 (1938).
Premeditation and deliberation may be formed while the killer is "pressing the trigger that fired the fatal shot." Caldwellv. State, 203 Ala. 412, 417, 84 So. 272 (1919); Daughdrill v.State, 113 Ala. 7, 32, 21 So. 378 (1897). There need be no "appreciable space of time between the formation of the intention to kill and the act of killing." Miller v. State,54 Ala. 155 (1875). Such space of time is "immaterial". "It was possible for the defendant to have framed a premeditated as well as a malicious design to kill after taking up the gun and before it was fired." Dixon v. State, 128 Ala. 54, 58,29 So. 623 (1901).
The existence of premeditation and deliberation must be determined from the particular facts and individual circumstances of each case.
 "There is no possible state of facts from which the law presumes their concurrence and coexistence is not a fact to which a witness, or any number of witnesses, can testify. It is a matter of inference from all the facts and circumstances of the particular case." Coats v. State, 253 Ala. 290, 294, 45 So.2d 35 (1950).
The formation of an intent to kill involved in premeditation and deliberation may be inferred from the character and extent of the wounds to the deceased, Wright v. State, 148 Ala. 596,42 So. 745 (1907), or those sustained by a surviving witness to the slaying. Gallant v. State, 167 Ala. 60, 52 So. 739 (1910). "Distance (is) a factor in determining whether or not the pistol was fired with the intent to kill." Washington v. State,269 Ala. 146, 156, 112 So.2d 179 (1959). "(T)he facts to be looked to as important in determining this intent to take life, . . . are the character of the assault, the use or lack of a deadly weapon, and the presence or absence of excusing or palliating circumstances." Bowen v. State, 32 Ala. App. 357,359, 26 So.2d 205 (1946). *Page 159 
The defendant also argues that the State failed to prove malice as an element of first degree murder despite the fact that a pistol was used and there was no excuse or justification for the two slayings. Where the fact of the killing is shown, unaccompanied by circumstances of legal justification, excuse or mitigation, the law presumes that the homicide was committed with malice, unless the contrary is shown. Clarke v. State,117 Ala. 1, 23 So. 671 (1898); Kent v. State, 367 So.2d 508
(Ala.Cr.App.), cert. denied, Ex parte State ex rel. Att.Gen.,367 So.2d 518 (Ala. 1978). Proof of the use of a deadly weapon raises the presumption of malice, and throws upon the defendant the burden of repelling that presumption unless the evidence which proves the killing shows also that it was done without malice. Warren v. State, 197 Ala. 313, 72 So. 624 (1916);Hadley v. State, 55 Ala. 31 (1876). However, even "if the evidence which proves the offense would permit an inference that the defendant acted without the requisite intent or malice, then the rebuttable nature of these presumptions must be submitted to the jury." Ex parte Bayne, 375 So.2d 1239, 1244
(Ala. 1979). When one kills another by the intentional (not accidental) use of a deadly weapon, malice, design, motive and intent to kill may be inferred "without more" and are presumed, unless the evidence proving the killing rebuts that presumption.Thompson v. State, 376 So.2d 761, 764 (Ala.Cr.App.), reversed on other grounds, Ex parte Thompson, 376 So.2d 766 (Ala. 1979);Hardin v. State, 344 So.2d 234, 238 (Ala.Cr.App. 1977).
Malice and intent may be inferred from the use of a pistol.Taylor v. State, 405 So.2d 946 (Ala.Cr.App.), cert. quashed, Exparte Taylor, 405 So.2d 951 (Ala. 1981) ("a loaded gun"); Smithv. State, 53 Ala. App. 141, 298 So.2d 71 (1974); Duck v. State,38 Ala. App. 652, 92 So.2d 55 (1957) (.22 caliber revolver).
Here, the killing is unexplained and the facts do not afford any reasonable inference of excuse, justification or mitigation. The circumstances do not rebut or disprove the presumptions of intent and malice. Compare Bayne, supra; Hambyv. State, 254 Ala. 139, 47 So.2d 218 (1950); Simpson v. State,31 Ala. App. 150, 13 So.2d 437 (1943). The existence of intent, premeditation, deliberation and malice can be properly inferred from the fact that the defendant fired three shots from a pistol which killed two men and injured a third. Harjo v.State, 395 So.2d 1104 (Ala.Cr.App.), cert. denied, Ex parteHarjo, 395 So.2d 1105 (Ala. 1981).
The presumptions of intent and malice springing from the use of a deadly weapon were not rebutted or contradicted by the evidence. The character of the assault, the extent and location of the wounds, the close proximity of the defendant to his victims, the fact that three shots were fired, the lack of excuse, justification or mitigation supply substantial proof that the killings were intentional, premeditated, deliberate and malicious.
 III
The trial judge instructed the jury "that there can be no defense of insanity because there has been no evidence offered to support a finding by a jury of any insanity as regards the evidence in this case." The defendant argues that this was error and that the issue of insanity was a question for the jury.
Prior to trial, the defendant's motion for psychiatric examination was granted. The defendant was sent to Bryce State Mental Hospital where he was found "presently competent to stand trial." The Lunacy Commission also found that the defendant's conduct was not the product of a mental illness and that the defendant "did possess the substantial capacity to appreciate the criminality of his conduct and to conform his conduct to the requirements of the law at the time of the particular act charged."
At trial, the only evidence presented in support of the defendant's plea of insanity was his records from Bryce Hospital. The defendant did not testify. Defense counsel argued that these records "say that the defendant has got an anti-social personality" *Page 160 
and "give a history which might lead the jury to suspect that certainly insanity is involved."
On appeal it is argued that the hospital records reveal "a history of family insanity, a mother committed to Bryce Hospital as well as bizarre and aberrant behavior in the defendant's past." The defendant contends that this constitutes a "scintilla" of evidence requiring the issue of insanity to be submitted to the jury; because there was a "scintilla" of evidence sufficient to warrant a finding of not guilty by reason of insanity, the trial judge erred in instructing the jury that there was no evidence of insanity.
The question of whether there is any evidence to substantiate a plea of insanity is a question of law for the court. Knightv. State, 273 Ala. 480, 489, 142 So.2d 899 (1962); McKinnon v.State, 405 So.2d 78, 80 (Ala.Cr.App. 1981). Where there is no evidence to establish the plea of insanity, the trial judge may instruct the jury that there is no evidence which would justify a finding of not guilty by reason of insanity and remove that issue from their consideration. Griffin v. State, 284 Ala. 472,475, 225 So.2d 875 (1969); Walker v. State, 269 Ala. 555,114 So.2d 402 (1959). "The trial court should not submit the issue of insanity to the jury unless there is evidence to sustain the plea." Darrington v. State, 389 So.2d 189, 190 (Ala.Cr.App. 1980). Requested charges submitting the defense of insanity to the jury are properly refused where there is no evidence tending to show that the accused was insane. Snead v. State,251 Ala. 624, 628, 38 So.2d 576 (1949); Pilley v. State,247 Ala. 523, 528, 25 So.2d 57 (1946); Johnson v. State, 247 Ala. 271,275, 24 So.2d 17 (1946); Johnson v. State, 169 Ala. 10,12, 53 So. 769 (1910); Connell v. State, 56 Ala. App. 43, 51-52,318 So.2d 782, reversed on other grounds, 294 Ala. 477,318 So.2d 710 (1974); Smith v. State, 32 Ala. App. 209, 211,23 So.2d 615, cert. denied, 247 Ala. 225, 23 So.2d 617 (1945).
In determining whether there was sufficient evidence of insanity to warrant the submission of that issue to the jury the trial judge must decide if there was any evidence of legal insanity. That is, was there any evidence that the defendant, at the time of the crime, lacked the substantial capacity as a result of a mental disease or defect to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Alabama Code 1975, Section 13A-3-1.
A review of cases which have considered this issue makes it clear that evidence of mental or emotional impairment or disability not amounting to legal insanity does not furnish sufficient evidence to warrant the submission of the insanity issue to the jury. Some cases treat such evidence of mental or emotional impairment as being insufficient while other cases treat such as no evidence of insanity. Griffin v. State,284 Ala. 472, 475, 225 So.2d 875 (1969) (Evidence that Griffin did not know victims whom he killed, that he drove his car up and down one of the victim's cotton fields, pasture and other crops, and drove through a fence four or five times prior to the killing and that he fell asleep in the Sheriff's car on the way to jail did not constitute evidence of insanity. "We agree that there was no evidence of insanity before the court.");Walker v. State, 269 Ala. 555, 561, 114 So.2d 402 (1959) (Court found "no evidence to support insanity plea" despite contention that no sane man would have perpetrated such a crime and statement in Walker's confession that "something came in my mind to go get her."); Rowe v. State, 243 Ala. 618, 623-24,11 So.2d 749 (1943) ("No evidence discharging the burden of proof that the law casts upon a defendant to show his insanity within the rules that obtain and excuse from crime. * * * There was evidence of unwillingness or failure to attend school, of (extensive) immorality, etc., but no evidence of insanity.");Manning v. State, 217 Ala. 357, 358-59, 116 So. 360 (1928) ("The basis for the insistence of insanity under his plea was merely the action of appellant just prior to and at the time of the homicide. This was not sufficient to bring defendant within the rule of Parsons (which defined legal insanity before Section 13A-3-1). . . . (D)efendant may have had *Page 161 
`good reason for a state of mind with reference to' his wife and deceased a few minutes before the homicide, yet emotional or so-called moral insanity not associated with disease of the mind, as an excuse for crime, had no recognition in the law of this state."); Rice v. State, 204 Ala. 104, 106, 85 So. 437
(1920) (Evidence that defendant played with children could do no more than show that he was of low and childish mentality and disposition, and, standing alone, was "utterly insufficient" to take to the jury the issue of insanity.); Granberry v. State,182 Ala. 4, 9, 62 So. 52 (1913) (Since there was no evidence that Granberry was afflicted with a disease of the mind, a requested charge on insanity was abstract despite evidence that he was under the influence of whiskey and cocaine at the time of the crime.); Brodka v. State, 53 Ala. App. 125, 131-32,298 So.2d 55 (1974) (Evidence was insufficient to sustain plea of insanity and court was justified in instructing jury to that effect despite evidence that Brodka was depressed and upset and his own testimony that "something just came over" him and that he "didn't know what he was doing at the time of the shooting."); Miles v. State, 50 Ala. App. 70, 72, 277 So.2d 104, cert. denied, 291 Ala. 792, 277 So.2d 107 (1973) (Despite evidence of total amnesia, court found "not a scintilla of evidence, not even a tittle, glimmer or thread, tending to show that appellant had a diseased mind within the purview ofParsons."); Johnson v. State, 43 Ala. App. 224, 227,187 So.2d 281 (1966) (Evidence that Johnson acted a little differently just prior to and after his divorce, that he seemed dazed or in a deep sleep, was very nervous and cried on some occasions was not sufficient to warrant the submission of the issue of insanity to the jury.); Smith v. State, 32 Ala. App. 209, 211,23 So.2d 615, cert. denied, 247 Ala. 225, 23 So.2d 617 (1945) (Although there was testimony that Smith "sorta seemed mad" and "seemed to be wrong some way or other", court found "no word in (the record) tending, even remotely, to show the actual insanity of the appellant.").
In other cases the court has simply found that no evidence of insanity existed without detailing what, if any evidence of mental state, was presented. Knight v. State, 273 Ala. 480,489, 142 So.2d 899 (1962); Snead v. State, 251 Ala. 624, 628,38 So.2d 576 (1946); Pilley v. State, 247 Ala. 523, 528,25 So.2d 57 (1946); Gales v. State, 338 So.2d 436, 438
(Ala.Cr.App.), cert. denied, 338 So.2d 438 (Ala. 1976); Uptainv. State, 37 Ala. App. 290, 291, 21 So.2d 111, cert. denied,260 Ala. 459, 71 So.2d 115 (1953).
The "scintilla rule" has not been approved in this state.Miles, 50 Ala. App. at 72, 277 So.2d 104. In a specially concurring opinion in Johnson v. State, 43 Ala. App. at 229-230,187 So.2d 281, Judge Cates stated his reasons for believing that this rule did not apply as to the degree of proof required on the issue of the statutory plea of not guilty by reason of insanity.
The general rule is found in 23A C.J.S. Criminal Law § 1130 (1961):
 "Where the defense of insanity is interposed, it first becomes a question of law whether the form of insanity attempted to be proved is a legal defense, or whether the facts proved would justify an inference of mental unsoundness; but, if the defense is allowed, unless the evidence thereon is legally insufficient or so conclusive as to warrant the issue being taken from the jury, or unless there is no real conflict in the evidence, the insanity of accused at the time of the crime is a question of fact to be determined by the jury, under proper instructions from the court. . . .
 "While the mere assertion of the defense of insanity is not, of itself, sufficient to entitle accused to go to the jury on such defense, only slight evidence of insanity at the time of the commission of the crime is required to raise the issue for submission to the jury; and if reasonable minds can reach different conclusions from the evidence, the question is for the jury. If, however, after giving the evidence the most favorable interpretation in favor of accused asserting the defense, an adverse conclusion must be reasonably reached, it is the duty of the court to rule on the issue as a matter of law and not *Page 162 
permit the jury to speculate on the question."
Here, there was no evidence that the defendant at the time ofthe crime lacked the substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law as a result of a mental disease or defect.
"Unusual or weird behavior alone cannot be equated with mental insanity." Meredith v. State, 370 So.2d 1075, 1078
(Ala.Cr.App.), cert. denied, 370 So.2d 1079 (Ala. 1979). The conclusion of every expert was that the defendant was not suffering from a mental disease or defect at the time he committed the crime. Although the defendant argues that a jury is not bound to accept expert testimony this is so only if there is other legal evidence to support their verdict.Cunningham v. State, 426 So.2d 484 (Ala.Cr.App. 1982); White v.State, 346 So.2d 22, 23 (Ala.Cr.App.), cert. denied,346 So.2d 26 (Ala. 1977).
Although the defendant could have been insane because of his personal and family history, he omitted a "vital factor" by failing to produce evidence that those conditions actually caused or resulted in his insanity. In this respect, the defendant's argument is very much like that advanced in Smith,32 Ala. App. at 210-211, 231 So.2d 615. There, Smith proved that her married life had been filled with tragedy, "cruelty, abuse and horrifying threats." She argued that "all such, cumulative over the years, might well cause appellant's mind to become unbalanced and irresponsible." However, the court found that she omitted proof of the "vital factor" that this treatment produced insanity." Smith, 32 Ala. App. at 210-211,23 So.2d 615.
In reaching this conclusion, Smith followed and approved the case of Milford v. State, 2 Ala. App. 104, 57 So. 96 (1911), wherein Milford had claimed that knowledge of his wife's "lewdness" had rendered him insane.
 "A jury have no right to infer the existence of insanity from the existence of a cause which may have some tendency to produce it, unless there is some evidence before them that insanity actually followed as a result of the possible cause. As was said by the Supreme Court of Indiana, `If it were a case where a given effect must follow the cause, there would be force in the argument because proof of the cause would be proof of the effect. But we know that the various causes that may tend to produce insanity very frequently fail to produce any such effect; and it seems to us that it is not competent to prove the existence of such exciting cause unaccompanied with some proof that the effect followed the cause. Indeed, a jury would not be authorized to find a man to be insane without proof on the subject other than the fact that a cause existed that tended to prove insanity.' Sawyer v. State, 35 Ind. 80."
Here, the evidence of insanity was insufficient to rebut the statutory presumption afforded the defendant. Cunningham, supra. After giving the evidence its most favorable interpretation in favor of the defendant, this is the only reasonable conclusion.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.